PENOBSCOT CHEMICAL FIBRE COMPANY, Appellant,

*vs.*

. INHABITANTS OF THE TOWN OF BRADLEY.

Penobscot.    Opinion November 19, 1904.

*Taxes.   Assessment.   Valuation.   Evidence.   Public Laws 1895, c. 122, §§ 1, 3, 6.*
*R. S. (1883), c. 6, § 96.   R. S. (1903), c. 9, §§ 77, 78, 79, 81.*

1.  In the trial of an appeal from the assessment of taxes, the valuation for the purposes of taxation placed by the assessors upon other property in town is inadmissible.

2.  Whether it would be admissible upon proof that the assessors had designedly and generally valued the property in town at less than its true value, quaere.

3.  The valuation placed upon the appellant's property by the assessors in other years is likewise inadmissible, upon the question of true value.

4.  The value, as distinguished from valuation, of other similar property in town, similarly situated, as shown by the evidence of actual sales, or by the opinions of properly qualified witnesses expressed in court is admissible upon the question of true value.

5.  The court by this proceeding can grant such an abatement as it deems reasonable, only in case it finds that the appellant has been "overrated," that is, that his property has been rated above its true value.

6.  "Overrated" in R. S., 1883, c. 6, § 96, means overrated with reference to the fair value of property in question, and not, by comparison with the valuation placed upon some other specific piece of property in town.

7.  If an appellant's property has been rated at no more than its true value, evidence tending to show merely a disproportionate valuation by comparison with· the valuation placed upon other property is irrelevant.

8.  The assessors are not agents of the towns, and there is no relationship between them and the town which makes their opinion as expressed in their official valuation admissible against the town.

9.  The assessment is not vacated by an appeal.  The assessment stands, and the burden is upon the appellant to show that he is entitled to relief, by way of an abatement of the tax.

10.  Water power, as such, is not taxable.  But the value of land upon which a mill privilege exists may be greatly enhanced by the fact that its topography is such that a dam may be erected across a stream upon it,

and water power thereby created. The capability of the land for such use, and the probability, or certainty, as the case may be, of its use, certainly affect its value.

11. The evidence in this case fails to satisfy the court that the appellant was overrated by the assessors.

12. The assessors abated the taxes assessed upon a part of the appellant's property, which it was claimed had been assessed twice. Inasmuch as the appellant had paid the tax before the abatement, it is now entitled to recover the amount of the tax which was abated.

13. But inasmuch as the abatement was made before the appeal was taken, no costs are awarded to the appellant.

On report. Judgment for appellant.

Appeal by plaintiff corporation from assessments of taxes in defendant town for the years 1901 and 1902. After the evidence had been taken out in the Court below, the case was sent to the Law Court on report "for determination upon so much of the evidence as is legally admissible."

The case appears in the opinion.

*C. F. Woodard and C. J. Dunn,* for plaintiff.

*G. T. Sewall and Matthew Laughlin,* for defendant.

SITTING: WISWELL, C. J., EMERY, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SAVAGE, J. Appeal from assessments of taxes in the defendant town for the years 1901 and 1902, brought under Public Laws, 1895, c. 122, § 1, (R. S., 1903, c. 9, § 79). The property assessed consisted of (1) a mill privilege, including the shore, embracing about eight acres of land, and a small mill used for cutting and splitting poplar wood, (2) about eleven acres of land, upon which was a two story house, and, (3) in the assessment of 1902 only, fourteen lots of land. As to the third class, it is claimed that these fourteen lots are embraced in the general descriptions of land contained in the first and second classes, and that the assessors assessed them as part of the larger tracts described, and also separately and specifically, thereby creating double taxation. In the written notice of their decision upon the application of the appellant for abatement of these taxes, which they were required by statute to give to the applicant, Public

Laws, 1895, c. 122, § 6, (R. S., 1903, c. 9, § 77), the assessors, not conceding that these lots were embraced in the larger descriptions, but expressing a wish "to avoid any possibility of double taxation," stated that they had abated all the taxes upon these fourteen lots. That statement is conclusive as to the abatement so far. Those taxes were abated before the appeal was taken. But as it appears that the taxes had been previously paid, it is conceded that the appellant is entitled to judgment for the amount of the abatement.

The controversy argued before us relates solely to the first and second classes of property assessed. The essential claims of the appellant are these: — that in assessing the taxes complained of, the assessor did not rate and value the property of the appellant equitably and proportionately as compared with other property of like nature and kind in the same town, and that the valuations placed upon such property were greatly in excess of the true values thereof.

It appears that the appellant, by owning the land on both sides of the river, is the owner of the entire dam and mill privilege in the Penobscot river as it flows between Old Town and Bradley, at the point called Great Works in Old Town. By the dam as at present constructed a waterfall of 2000 horse power has been created. The appellant's principal works, — a pulp mill and a saw mill, — are situated at Great Works on the Old Town side, and about 1500 horse power, under varying conditions, is used in the operation of the pulp mill and saw mill. About 25 horse power is used at the cutting up mill in Bradley, and the rest runs to waste. The tract of land in Bradley assessed as the mill privilege and shores, and containing about eight acres, extends along the river from the Milford line to the vicinity of the dam, about a half mile in a straight line, or a mile following the windings of the river. At the Milford line it is 570 feet wide. Proceeding thence southerly it narrows until at the distance of about 1500 feet, it is only 90 feet wide. The remaining distance it has no appreciable width above high water mark. A portion of the land is used for piling purposes, as is also a portion of the land in the eleven acre tract. The latter tract does not border upon the river. The appellant Company is accustomed to cut several thousands of cords of poplar, each year, at the cutting

up mill on the Bradley side, and pile it upon these piling grounds, until it can be taken across the river to the pulp mill on the ice in winter. Otherwise, the company does not make any specific use of either tract, of any value worth mentioning.

The case is now before us upon report, to be determined "upon so much of the evidence in the case as is legally admissible." At the outset we are met with the objection that much of the evidence which the appellant was permitted to introduce below was not admissible.

Briefly stated, the important objections are to evidence showing (1) the valuation of other lots in the town for the purposes of taxation, as also of one other mill privilege, and (2) the valuation placed upon the appellant's property by assessors in other years. The admissibility of evidence of the first kind depends in part, at least, upon whether it is competent in proceedings of this character to inquire into the disproportionate valuation of the property in question as compared with that of other property in the town. Some courts, deciding under the statutes of their respective states, have held that when assessors have designedly made a general under valuation of the property in their town, but have assessed some property for more than the general rate, justice requires that the latter valuation should be reduced to compare with the general valuation, and have ordered a corresponding abatement of the taxes assessed. *Manchester Mills* v. *Manchester*, 57 N. H. 309; *Randell* v. *Bridgeport*, 63 Conn. 321. The appellant contends that the rule thus stated is applicable in this case, and that the evidence referred to was admissible because it had some tendency to show a general undervaluation, or if it did not, then because it tended to show a disproportionate valuation. That is to say, if the other pieces of property were valued fairly at their just value, then, it is claimed, the evidence shows that the appellant's property was greatly overvalued, or if the other property was undervalued, then the appellant's property, valued even at its just value, was proportionately overvalued. We may dismiss the first proposition with a word. If we assume that the evidence is properly in the case, it entirely fails to show a general and designed undervaluation. It relates to three or four pieces of property only. It furnishes no sufficient basis by which

we may judge whether the assessors designedly undervalued the property in the town generally or not. Accordingly we refrain from deciding what should be the rule in a case where such a design was proved.

The other proposition is fairly before us. Can the appellant show itself entitled to an abatement in these proceedings by proving that while other pieces of property were undervalued, its own property was assessed its full value? We think not. If its property was assessed for more than its just value, it has a remedy here and now. But if its property is assessed for no more than its fair value, it cannot complain by this appeal that some of its neighbors have escaped for less.

The constitution of this state declares that "all taxes upon real and personal estate, assessed by authority of this state, shall be apportioned and assessed equally, according to the just value thereof." It is therefore incumbent upon every citizen to bear his full proportion of the expenses of government, according to the value of his estate. It is the duty of assessors to so apportion the burdens of taxation. And in an ideal state of existence they are so apportioned. A decent regard for the equal rights of citizens, as well as the constitutional provision, require that assessors shall use their best judgment so to apportion them. If one citizen pays less than he ought, the others must pay more than they ought, and the constitutional provision is violated. Some are thereby made to bear unjust as well as illegal burdens.

But we are not living in a perfectly ideal state of existence. With the imperfections of human judgment, no way has yet been found by which the burdens of taxation may be adjusted, in individual instances, with perfect equality and true proportion. Necessarily the apportionment is left to men,—to the assessors. They constitute a board which acts judicially. They inquire and determine. But they are only men, after all. The judgment of one man is not that of another man. The judgment of one board is not that of another board. Men look at things differently, value them differently. There is no fixed standard of value by which assessors may be governed. It may happen that assessors, even after the exercise of due

diligence, may fail to understand fully the conditions surrounding a particular piece of property, or properly to appreciate its value. There probably never was a case in this, or any other state, where assessors succeeded in rating all property according to its just value, or in apportioning all taxes with perfect equality. Neither the constitution nor common sense expects so nice a result. To say that a way to an abatement is opened wherever it happens that a few other pieces of property are undervalued, would probably undermine every assessment in every town. The law does not impose so strict a test.

The statute provides that if the county commissioners think an applicant to them for an abatement "is overrated, he shall be relieved by them." R. S. (1883), c. 6, § 96, (R. S., 1903, c. 9, § 78). And that when an appeal is taken to the court, the appellant "may be granted such abatement as the court may deem reasonable, under the same circumstances as an abatement may be granted by the county commissioners." Public Laws, 1895, c. 122, § 3, (R. S., 1903, c. 9, § 81). This means, as we construe it, that the court may grant such abatement as it deems reasonable, if it finds that the appellant has been overrated. We come then to inquire what construction should be given to the word "overrated." Does it mean overrated by comparison with the valuation placed upon some other specific piece of property in the town? Or, overrated with reference to its just value? We think the latter. We have already pointed out the practical impossibility of rating all property with precise equality.

It is, however, to be presumed that, barring the imperfections of human judgment, all property is rated at its just value, and we think the legislature had that presumption in mind and intended to provide a remedy only for him whose property is rated for more than its value. The court is not an equalizing board. If it were to attempt to equalize valuations, what should be the standard? Should it be the lowest valued property in town? May the court upon proper application, abate taxes on all other pieces of property so as to conform to the lowest standard? Yet in no other way can it reach equality by abatement. There seems to be no other fair standard, unless we use the standard of just value. To attempt to use any standard except the latter would open a very Pandora's box of evils.

We think it is the duty of the court to grant an abatement, only if it finds that the appellant's property has been rated above its true value.

The Supreme Court of Massachusetts, in *Lowell* v. *County Commissioners*, 152 Mass. 372, had occasion to pass upon a similar question. The language of the Massachusetts statute is more specific than ours. It is this:—"A person aggrieved by the taxes assessed upon him may apply to the assessors for an abatement thereof; and if he makes it appear that he is taxed at more than his just proportion, or upon an assessment of any of his property above its fair cash value, they shall make a reasonable abatement." It is to be noticed that the legislature in that state distinctly had in mind both phases of the question, namely, a disproportionate valuation and an excessive valuation. The question in that case arose upon a consideration of evidence offered to show the valuation placed upon certain other pieces of property in Lowell, owned by other corporations and individuals, as compared with their valuation of certain like pieces of property of the complaining tax payer. The court held that the evidence was inadmissible for the purpose of determining the proportionate value as distinguished from the actual value, and that such was not the test to be applied in determining whether the complainant had been overrated. The court said:— "Whatever may be the remedy, if there be any, when it is shown that the assessors have intentionally assessed the property of a part or all of the inhabitants at less than its fair cash value, we are of opinion that, in a petition for the abatement of taxes on the ground of the overvaluation of the property of the petitioner, and the disproportionate taxation arising from such overvaluation, the question is whether the property has been valued at more than its fair cash value, and not whether it has been valued relatively more or less than similar property of other persons."

We think, therefore, that evidence tending to show merely a disproportionate valuation was not admissible for that purpose, and that the appellant is not entitled to relief in this proceeding on that ground.

It remains to inquire whether the appellant's property was rated at more than its just value.    And here we must consider the admissibility of evidence of both classes objected to.    First, does the valuation placed upon other similar pieces of property, assuming that they were such, have any legitimate tendency to show the true value of appellant's property?    We think not.    Value must be distinguished from valuation.    That the value of other similar property similarly situated may have some tendency to show what is the value of this property may be admitted.    *Warren* v. *Wheeler*, 21 Maine, 484.    Actual sales of such other land may be shown as bearing upon the value of the land in question.    *Shattuck* v. *Stoneham Branch Railroad*, 6 Allen, 115.    Persons properly qualified may express an opinion of the value of such other lands. · *Chandler* v. *Jamaica Pond Aqueduct*, 125 Mass. 544.

But such value must be shown by testimony in court.    Here it is sought to prove the fact of value, by a valuation out of court, that is, by the recorded opinions of the assessors, out of court.    Such evidence is sometimes admitted without objection, for convenience, but we think, strictly speaking, it is not admissible, and is to be regarded as hearsay.    It is not competent to prove value, in such a case as this, by the assessors' valuation.    *Lowell* v. *County Commissioners*, supra.

Again, the appellant seems to rely upon the recorded valuations of this property, made by the same or other assessors in other years, as having some tendency to show the actual value of the property. We think however that they are not admissible for that purpose. The statutes contemplate an independent valuation each year.    And the question at issue is, what was the true valuation the years in question, not, what the assessors of other years thought it was then. There is no relationship between the town and the assessors which makes the opinion of the latter admissible against the former.    The assessors are an independent statutory board.    They are not agents of the town.    Their opinions are not the town's opinions by relation. *Rockland* v. *Farnsworth*, 93 Maine, 178.    Though they are elected by the town, the town cannot control them, nor dictate their course of proceeding.    Their duties are prescribed by statute.    They assess

taxes not for the town alone, but for the county and state as well. Their assessments for other years are, to be sure, conclusive as to value for taxing purposes in those years; but as bearing upon the assessments under consideration, and as having a tendency to show error in them, we think they can be regarded only as the opinion of the assessing boards out of court, and hearsay.

We come now to inquire whether it has been shown that the appellant's property was rated for more than its just value. We think the burden is upon the appellant. An appeal of this character does not vacate the assessment. If the appeal is sustained, and an abatement granted, the town is still entitled to judgment for the amount of the tax assessed, less the abatement, unless the tax has been paid. What is called an appeal is really a petition for an abatement, and the appellant here must show that it is entitled to relief.

The mill privilege with the eight acres of shore, with shore rights, was valued at $17,000 in 1901, and $20,000 in 1902. Included in this valuation was a dam, or so much of it as lies in the town of Bradley. The entire original dam was built in 1887 at a cost of $22,000. Two or three years later the bank on the Bradley side was washed out, and in consequence a new section of dam was built in the place of the washout at a cost of about $5,000, all of which was in Bradley. In the same valuation is also included the cutting up mill, which it is said cost about $900. The appellant contends that the value of the dam has depreciated by age at least 50 per cent from its cost, that the cutting up mill is not worth more than $500, and that the eight acres of land is of comparatively little value, that aside from its limited use for piling purposes, there is no other use of any particular value to which it can be put; that it can indeed be divided into house lots, but that there is no demand whatever for house lots in Bradley, and that land can hardly be said to have a market value for that purpose. The appellant also urges that inasmuch as practically all the water power created by the dam is used in Old Town, it should be regarded as appurtenant to the mills in Old Town, under the authority of *Union Water Power Co. v. Auburn,* 90 Maine, 60, and that the additional value which the existence of

the water power creates should not be assessed to the company in Bradley. But the true rule was laid down and the distinction pointed out in *Saco Water Power Co.* v. *Buxton,* 98 Maine, 295. Running water is not property, and is not taxable. So water power, as such, is not taxable. It was so decided in the Auburn case. But land upon which a mill privilege exists is taxable, and the value of the land may be greatly enhanced by the fact that its topography is such that a dam may be maintained across a stream upon it, and water power thereby created. The capability of the land for such use, and the probability or certainty, as the case may be, of its use, certainly affect its value. Such is the law of the Buxton case. The question here is a simple one. It is not, where is the water power created by the appellant's dam used, but how much is its property in Bradley worth. How much is it worth as it stands,—not for farming merely, nor for house lots, nor for any other one thing, but for any and all purposes for which it may be used. How much is it worth, taking into account that it is part of a valuable mill privilege,—one of the best on the Penobscot River, as witnesses on both sides say,—and upon which valuable water power is created. Although the power is used mostly in Old Town, the Bradley bank is just as essential to the creation of water power as that in Old Town. One is worthless without the other. If it did not own the Bradley shore, the appellant must share the use of the water with the riparian owner on that side. It may be that the Bradley shore is not as valuable as the Old Town shore, for it may be assumed that the latter is more available as a mill site, and perhaps also for other uses. Nevertheless, it is not to the purpose to make a comparison of values between the two sides. We come back to the original question,—what is the company's property in Bradley worth, taking into account all the conditions which affect its value?

It would serve no useful purpose to the parties nor to the profession to record an analysis of the evidence bearing upon values. We have already adverted to all the particular features which affect the shore lot. There is nothing in the evidence touching the eleven acre lot, sometimes called the "12 to 20 acre lot," which needs especial mention. It will suffice to say that a very careful examination of

the evidence fails to satisfy us that the appellant was overrrated by the assessors.

But as to the tax on the fourteen lots mentioned in the earlier part of this opinion, it is conceded that the appeal may be sustained, and as the tax on them has been paid, judgment should be rendered for the appellant for $18.20, the amount paid. Public Laws, 1895, c. 122, § 3, (R. S., 1903, c. 9, § 81.) As the assessors corrected this error before the appeal was taken, costs will not be awarded.

*Judgment for appellant for $18.20, without costs.*