[No. 8045.]

## Kendrick, County Treasurer, v. Twin Lakes Reservoir Company.

1. Taxation—*Taxable Property—Works of Irrigating Company.* A canal owned by mutual irrigating company, and used exclusively for irrigating the lands of the individual members of such corporation is exempt, under the constitution, from separate taxation.

The head-gates of such canal are parts thereof, and are likewise exempt. (287)

So a dam, which is part of the works by which water is collected and diverted. (287)

Such works are not to be regarded as improvements to the land upon which they are situate. (287)

2. ——*Water Rights,* under Rev. Stat. Sec. 5540 · are, for the purposes of taxation, part of the real estate upon which the water is applied. (288)

3. Constitutional Law—*Legislative Power.* As a general proposition, and save as restricted by the constitution, it is competent for the legislature to fix the *situs* of property for taxation. (288)

*Error to Lake District Court.*—Hon. James Owen, Judge.

Mr. Joseph W. Clarke, for plaintiff in error.

Mr. W. L. Hartman, Mr. C. A. Ballreich, and Mr. Chas. W. O'Donnell, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

1. This action involves the legality of a tax assessed and levied upon a reservoir system storing water for irrigation in Lake county, to be used upon lands in Crowley county. After the complaint, answer and replication were filed, the cause was submitted to the court by agreement, and the facts settled, in the main, by an agreed statement in open court, the right to maintain the action not being questioned.

The Twin Lakes Reservoir Company, defendant in error, is a mutual corporation organized under the laws of Colorado for the purpose of acquiring the site known as Twin Lakes in Lake county, for a reservoir, storing water therein for irrigation, and conducting it to where it is to be applied for the exclusive use of its stockholders in Otero, now Crowley county. Lake creek is the old outlet or natural water course connecting Lower Twin Lake with the Arkansas river. In utilizing the reservoir, a solid dam was built across this channel from bank to bank, and a new canal about a mile long, called the outlet canal, constructed from the margin of lower Twin Lake to Lake Creek. The stored water is conducted through this canal from the Lower Lake into Lake creek, thence into the Arkansas river and down this stream through the counties of Lake, Chaffee, Fremont and Pueblo to the river headgate of the Colorado canal in Pueblo county, thence through the canal into Crowley county, where it is distributed *pro rata* to its stockholders who use it exclusively for irrigating their lands in that county. The corporation is purely a mutual reservoir company, in which the capital stock stands for and represents the consumer's interest in the reservoir, canal and water rights. The benefit derived from owning the stock, is the exclusive use of the water it represents. It is not

a dividend corporation, a dividend has never been declared, and under its charter, never can be declared on its capital stock. All expenses and obligations of the company, including the cost of operation and maintenance of its works, are paid by annual assessments on the capital stock, *pro rata,* voted by the stockholders, and it has no other means or raising revenue.

In 1907, the assessor of Lake county added to the tax schedule turned in by the company, the following item: "A structure known as a dam and gate across the present outlet of lower lake," and fixed and assessed the value thereof at $50,000.00; also "A dam across the lower outlet of lower lake," and fixed and assessed the value thereof, at $5,000.00. These two items were added by the assessor to the tax schedule for the years 1908, 1909, 1910, 1911 and 1912. The $5,000.00 item added by the assessor, is the dam across Lake creek, which is the old outlet or natural channel from Lower Twin Lake. The company constructed and maintained in the outlet canal, called the "present outlet," steel headgates, 400 feet from the margin of the lake, resting on a concrete foundation, with stone and concrete retaining walls between the sides of the gates and the sides of the canal, which gates can be raised and lowered, and are used for the purpose of retaining, regulating, and drawing water from the reservoir. This structure constitutes the $50,000.00 item added by the assessor on "A structure known as a dam and gate across the present outlet." These works are located on a tract of land comprising about 35 acres listed as lot 3 in the NE¼ SE¼, 22-11-80, the assessed valuation of which, for 1907 was $147.00, the tax levied and assessed against it amounting to $4.62. The company paid all the taxes on all its property in Lake county for 1907 and all prior and subsequent years except the two items added to the schedules, and lot 3.

It tendered the tax on this lot, which tender the treasurer refused to accept unless it also paid the taxes on these disputed items.

The agreed statement of facts contains, *inter alia,* the following:

"That the plaintiff has each year, within the time provided by law, turned in to the county assessor of Lake county, its sworn tax schedule covering all of its property subject to taxation in said county and has paid the taxes thereon each year, except only that it has not included in such tax schedule the dam and the gates in the outlet canal, the taxability of whch is an issue in this case, but that the company in its various tax schedules included the land on which the earth dam is situate and the outlet gates located, that in and for the year 1907, the then county assessor of Lake county added to the tax schedule of plaintiff company that year, an item in the following language: 'a structure known as a dam and gate across the present outlet of Lower Lake' and fixed the value thereof at $50,000; and by adding a further item to plaintiff's tax schedule for that year in the following language: 'A dam across the lower outlet of Lower Lake' and assessed and fixed the alleged value at $5,000; and that the county assessor of Lake county has each and every year thereafter down to the present time added similar items in substantially the same language, and placing the value at the same amount each year, that is $5,000 for the earth embankment and $50,000 for the gates in the outlet canal. And these two items are the items of taxation that are involved in the litigation for the years 1907 to 1912 inclusive; that plaintiff made tender each year of the amount of tax on the sub-division or sub-divisions of land upon which the dam and gates are located, but without including in such tender the tax on the two items of dispute; and that such tender

was refused because of plaintiffs not including in the tender the tax on the two items so in dispute; so that plaintiff is not in default in the payment of any of its taxes except on those two items in dispute.''

These two items were not, and were not intended to be additional assessments upon lot 3, but were items added to the schedule by the assessor after they had been returned, in addition to the valuation of the land.

On the trial of the case, the county took the position that the tax levied on the dam and headgates was intended to be, and was in fact a mode or method pursued by the officials in assessing and levying a tax upon the reservoir system as a whole, and especially upon the impounded water and water rights therein, which were the principal assets of value, and the case is argued here upon that theory. Witness Gildea, who as assessor added the two items, when asked what property they were intended to cover, said:

''It would be my understanding in assessing that as a dam that that would include all that a reservoir means. At least to my mind a dam would not just mean that barrier or that gate that was erected to impound these waters. I would take it to mean that reservoir with all those waters in it. * * * Those two items are the assessment of the reservoir, as I understand it.''

T. A. Goldner, one of the assessors who also added the two items to the tax schedules, testified substantially to the same effect, saying that the added assessment and levy on the dam and gates was intended as a mode or manner of assessing the water rights and the right to impound water in the reservoir, which was the valuable asset.

The dam across Lake creek and the headgates mentioned as being in the present outlet canal have no utility or value other than holding and retaining the water

in the reservoir, and regulating its discharge therefrom. They would be and are worthless and useless except in connection with the outlet canal, and the water rights in the reservoir represent and include whatever utility or value there is in the dam and headgates. The canal would be worthless without the dam and headgates, and the dam and headgates would be worthless without the canal. The water rights in the reservoir which are owned exclusively by the stockholders, have each year since its construction, been assessed as improvements on their respective lands in Crowley county where they have paid taxes on the water rights in the reservoir as improvements.

The stipulation also contains the following:

"By way of example, for the year 1912, the average assessed value of grazing lands in Crowley county * * * was $4.15 an acre; whereas the average valuation for 1912 on lands under said Colorado canal, with Twin Lakes water rights, is $26.84 per acre, and approximately these averages or differences in assessed valuation of grazing lands and lands to which Twin Lakes water rights attach, since the year 1900, maintain. The difference in valuation being almost entirely due to the taking into consideration of the value of the water rights as improvements on the lands. In some instances irrigated lands, with Twin Lakes water rights, have been assessed as high as $25.00 an acre, while lands immediately adjoining, but without water rights, have been assessed at $1.25 an acre; that if the taxes in issue in these cases are valid and must be paid, the stockholders of the plaintiff company, who are paying the taxes on their respective lands and water rights from said reservoir, will have to pay this tax by *pro rata* assessments on the stock of the plaintiff company."

Judgment was entered in favor of the company

against the county officials, to reverse which the case is here on error.

2. The outlet canal is used exclusively for irrigating lands of the individual members of the corporation owning the canal, and is exempt under constitution from separate taxation. The headgates are a part of the canal, and it would seem absurd to take the position that they could be taxed when the canal is exempt. One might as well say that if a wagon was exempt, it did not prohibit the taxation of the wheels by which it was used. We do not think the $50,000 item as a separate tax upon the headgates of the canal, needs further consideration.

The dam in the old channel has no utility or value disconnected from the reservoir; that is, in and of itself. The essential thing or real value is in the impounded water or water rights in the reservoir, and it is only as the dam, as a part of the system, is used to impound water, that it has any utility or value whatever. It is a means to an end, which is the furnishing of a supply of water for irrigation to the stockholders. Apart from this object, it has no value. The whole of lot 3, containing 35 acres, on which the dam is situated, was listed for taxation at $147.00, the tax thereon being only $4.62. No one would think of assessing the dam separately as an improvement to the land, because considered separately it was not an improvement, but a burden. The dam went with, belonged to and formed a part of the reservoir, and a separate tax could not be imposed upon it as an improvement on lot 3. It is an integral part of the reservoir itself. The taxing officials recognized this, and in explanation of the two items said it was the intention, by the addition of the $55,000.00 valuation to the schedule to tax the essential asset, which was the water rights in the reservoir, and that the assessment and levy upon the dam and gates was adopted as a means to accom-

plish this end. The question then, to be considered is, where is the place of taxation of the reservoir rights? The revenue act of 1902 provides, that whenever the terms mentioned in section 13 thereof, are employed in the act, that they are used in the sense affixed to them in that section. R. S. 1908 § 5540. This section provides that the term real estate shall include improvements. It then says, that the term improvements shall include buildings, water rights, structures, fixtures and fences erected upon or affixed to land. It therefore follows that water rights, under our revenue law, for the purpose of taxation, are included within and constitute a part of the real estate upon which the water is applied. As a general proposition, unless restricted by the constitution, it is competent for the legislature to fix the situs of property for the purpose of taxation.—*Ames v. People,* 26 Colo. 99, 56 Pac. 656. There is nothing in our constitution which prohibits the legislature from providing that water rights shall be taxed with the land upon which they are applied, and we do not think it was the legislative intent to place a double taxation upon these reservoir rights—one in the county where the reservoir is situated, and another in the county where the rights are used. There is no doubt but these reservoir rights were taxable, and were taxed in Crowley county in connection with the land upon which they were used. Certainly if the stockholders paid taxes on the reservoir rights in that county, where the water was applied upon their lands, they ought not to be required to pay another tax upon the same property in Lake county where none of the water was used. In accordance with the foregoing views, the judgment of the lower court will be affirmed.

*Affirmed.*

Decision *en banc.*

Mr. JUSTICE WHITE not participating.