· (April 3, 1917.)

## SAMUEL IRETON and ALEXANDER IRETON, Respondents, v. IDAHO IRRIGATION COMPANY, LIMITED, a Corporation, Appellant.

### [164 Pac. 687.]

IRRIGATION AND WATER RIGHTS — REAL PROPERTY — LIENS AND MORTGAGES—PRIORITY.

Where a Carey Act construction company enters into a contract with a desert land entryman, whereby it furnishes water to him which is based upon, and the right to the use of which becomes appurtenant to, the land, and issues to him shares of stock in an operating company which it is intended shall ultimately become the owner of the irrigation system, and retains possession of the shares as security for the payments to be made therefor, but does not record the contract, and the entryman afterward mortgages the land to a third party who, without actual notice of any lien or claim of the construction company, acquires such mortgage and records it, the lien created by the mortgage attaches to the water right and to the shares of stock, and is superior to the lien or claim of the construction company.

[As to mortgage as "security," see note in **Ann. Cas.** 1914D, 625.]

APPEAL from the District Court of the Fourth Judicial District, for Gooding County. Hon. James R. Bothwell, Judge.

Action to foreclose real estate mortgage. Judgment for plaintiffs. *Affirmed.*

Oppenheim & Hodgin and Longley & Walters, for Appellant.

Carey Act operating companies are mutual irrigation companies, and each share of stock represents the interest that the holder thereof has in such corporation. (*Hobbs v. Twin Falls Canal Co.*, 24 Ida. 380, 133 Pac. 899.)

Certificates of stock are simply the muniments and evidence of the holder's title to a given share in the property and franchises of the corporation of which he is a member. (4 Thompson on Corp., 2d ed., secs. 3455–3465.)

Shares of stock in an irrigation company are personal property under sec. 2747, Rev. Codes. (*Watson v. Molden,* 10 Ida. 570, 79 Pac. 503.)

Shares of stock in an irrigation company are not appurtenant to the land owned by the owner of such shares. (*Wells v. Price,* 6 Ida. 490, 56 Pac. 266.)

The settlers' contract is in the nature of a conditional sale, and the title to the water does not become vested in the entryman until the purchase price thereof is paid. (*Bennett v. Twin Falls North Side Land & Water Co.,* 27 Ida. 643, 150 Pac. 336.)

Where a transaction gives one party inequitable advantage over the other, equity will often interfere in behalf of the injured party, and equity has at times impressed liens in absence of expressed contract, and contrary to the rules of law. (*Clapp. v. Maurer,* 94 Kan. 549, 146 Pac. 1156.)

Richards & Haga, McKeen F. Morrow and Marvin C. Hix, for Respondents.

Water rights sold by a Carey Act construction company are not personal property, for they "embrace a proportionate interest in the canal or other irrigation works, together with all the rights and franchises attached thereto." (Sec. 1615, Rev. Codes; *State v. Twin Falls Canal Co.,* 21 Ida. 410, 121 Pac. 1039; *State v. Twin Falls Canal Co.,* 27 Ida. 728, 151 Pac. 1013.)

The construction company serves only as a conduit for transferring the right to the use of water from the state to the settler, and the operating company is merely a trustee for the settlers and owners of the water rights, and the interest of the water user is realty, for it is an undivided and proportionate interest in the irrigation system, water rights and appropriations. (*Idaho Irrigation Co. v. Lincoln County,* 28 Ida. 98, 152 Pac. 1058; *Bennett v. Twin Falls North Side L. & W. Co.,* 27 Ida. 643, 150 Pac. 336; *Berg v. Yakima Valley Canal Co.,* 83 Wash. 451, 145 Pac. 619, L. R. A. 1915D, 292; *In re Estate of Thomas,* 147 Cal. 236, 81 Pac. 539.)

The nature of the water right acquired by a settler under a Carey Act project is determined by the statutes and not by the certificate of stock in the operating company.    Such certificate is merely convenient evidence of the number of water rights or shares in the system owned by the settler.    Upon the purchase of the water rights, they become appurtenant to the land, and the transfer of the land operates as a transfer of the water rights, and the possession of the stock certificates by one who does not own the land therein described and to which the water has been made appurtenant will not entitle the holder of such certificate to water thereunder for use upon other lands.    (Kinney on Irrigation, 2d ed., sec. 1484; Wiel on Irrigation, 3d ed., sec. 1269.)

By the constitution, statutes and decisions of this state, even water rights outside of Carey Act projects are appurtenant to the lands to which the water is applied. (*Paddock v. Clark,* 22 Ida. 498, 126 Pac. 1053; *Russell v. Irish,* 20 Ida. 194, 118 Pac. 501; *Taylor v. Hulett,* 15 Ida. 265, 97 Pac. 37, 19 L. R. A., N. S., 535; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Stanislaus Water Co. v. Bachman,* 152 Cal. 718, 93 Pac. 858, 15 L. R. A., N. S., 359.)

Record title and possession constitute complete indicia of absolute ownership, and the law does not require a purchaser or encumbrancer to make further inquiry. (*Quick v. Milligan,* 108 Ind. 419, 58 Am. Rep. 49, 9 N. E. 392; *Blight v. Schneck,* 10 Pa. St. 285, 51 Am. Dec. 478; *Hubbard v. Greeley,* 84 Me. 340, 24 Atl. 799, 17 L. R. A. 511; 24 Am. & Eng. Enc. Law, 187; 34 Cyc. 614.)

When one of two innocent persons—that is, persons each guiltless of an intentional moral wrong—must suffer a loss, it must be borne by that one of them who by his conduct, acts or omissions has rendered the injury possible. (Pomeroy's Eq. Jur., 2d ed., sec. 803; *Quick v. Milligan, supra; Blight v. Schenck, supra; Hubbard v. Greeley, supra; Pennypacker v. Latimer,* 10 Ida. 618, 81 Pac. 55; *Schultz v. McLean,* 93 Cal. 329, 28 Pac. 1053; *Noble v. Moses,* 74 Ala. 604.)

MORGAN, J.—On December 21, 1911, Robert Lansdon and his wife executed and delivered their promissory note for $2,000 to Boise Title & Trust Company, and, on the same day, to secure the payment thereof, executed and delivered to that company a mortgage upon 160 acres of land in Gooding county, together with any and all water rights owned by the mortgagors or belonging to or connected with the premises. The mortgage was duly recorded on January 8, 1912, and on March 13th of that year, and prior to the maturity of the note, was sold, and assigned, together with the indebtedness thereby secured, to respondents who have commenced this action to foreclose it.

Appellant, a Carey Act construction company, entered into a contract with the state of Idaho to construct an irrigation system in the counties of Blaine and Lincoln, out of a portion of which latter county the county of Gooding has been created, for the purpose of watering lands entered under the Carey Act. The contract provided that appellant should sell to entrymen water rights and shares of stock in the Big Wood River Reservoir & Canal Company, Limited, a corporation to be formed by it, in order to facilitate the transfer of the ownership and control of the system to purchasers of water rights and for their convenience, when they shall have acquired the system, in its management and control and in the distribution of water therefrom to their lands according to their respective interests. The shares were to represent a proportionate interest in the irrigation works, one share to be issued for each acre of land to be irrigated. The land in question was not Carey Act land, but was acquired by Lansdon under the desert land laws of the United States and is adjacent to the Carey Act segregation of appellant and capable of being irrigated only by its system.

On April 1, 1910, appellant and Lansdon entered into a written agreement, whereby the latter purchased a certain number of shares in the canal company, each share entitling him to one-eightieth cubic-foot of water per second and a proportionate interest in the system. The contract provided that in case of default in the payment of any instalment of

the purchase price appellant might, at its option, declare all payments due, enforce any lien it might have upon the water right and land, or proceed to enforce any remedy given it by law. Lansdon and wife, by the terms of the contract, which was recorded on June 28, 1913, were to transfer, and did transfer, the stock to appellant as security for the payments to be made. In settlement of the first payment due the entryman gave his promissory note to appellant; he defaulted in the subsequent payments.

Neither respondents nor the Boise Title & Trust Company at the time they respectively acquired the mortgage or at any time prior thereto, had actual notice of any lien of appellant by reason of the entryman's contract and, as above stated, the mortgage was made and recorded long prior to the date of recording the contract.

Water was delivered to and applied to a beneficial use upon the land during 1911, and the right to the use of water therefor from the system of appellant has never been abandoned. Lansdon made final proof on December 12, 1911, and evidence of the water right, consisting of the contract between himself and appellant, formed part of the proof. Final certificate issued January 6, 1912, and patent July 6, 1914. The irrigation system has been practically completed, but is not yet accepted by the state nor have the works been turned over to the operating company.

The court rendered judgment in favor of respondents, decreeing that the lands, water right and shares of stock be sold and the proceeds applied, first, to the payment of the costs of sale; second, to the payment of the claim of respondents, and third, to the payment of the claims of appellant for the purchase price of the water right. This appeal is from the judgment.

The only issue presented in this case is as to the relative priority of the liens of the appellant and respondents upon the water right in question, it having been conceded by appellant that whatever lien it has upon the land, by virtue of its contract, is subsequent to the mortgage. It is contended by respondents, and denied by appellant, that the water right

is real property, appurtenant to the land, and was conveyed by the mortgage.

Sec. 3056, Rev. Codes, includes water rights within the definition of real property. Such rights are appurtenant to the land to which the water represented thereby has been beneficially applied. (Sec. 4, art. 15, constitution; sec. 3240, Rev. Codes; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Taylor v. Hulett,* 15 Ida. 265, 97 Pac. 37, 19 L. R. A., N. S., 535; *Russell v. Irish,* 20 Ida. 194, 118 Pac. 501; *Paddock v. Clark,* 22 Ida. 498, 126 Pac. 1053.) Furthermore, by the terms of the contract between the state and appellant, and of that between appellant and Lansdon, the water right was dedicated, and made appurtenant to the land involved herein and none other.

Sec. 1629, Rev. Codes, being a part of the chapter of the Idaho law whereby the conditions of the Carey Act are accepted, provides that any person, company or association furnishing water for a tract of land shall have a prior lien upon the water right and land for all deferred payments for the same, and that the contract for the water right, upon which the lien is founded, shall be recorded in the office of the recorder of the county where this land is situated. While the land involved here was not a Carey Act entry, but was acquired under the desert land laws of the United States, the contract between appellant and Lansdon, the entryman, provided: "That the purchaser has made application to the company to purchase upon the terms hereinafter set forth, shares in the Big Wood River Reservoir and Canal Company, Limited, upon the same terms and conditions, as near as may be, as purchasers of water rights under the Carey Act." In that contract it was provided that Lansdon and his wife, for and in consideration of the premises and of the agreements and covenants of appellant, and as security only, by way of mortgage, for the payment, when due, of the sums agreed to be paid for the water rights did grant, bargain, sell, convey, assign, transfer and set over unto appellant, its successors and assigns, all their right, title and interest in and to the lands and premises described in the contract, and

Lansdon also agreed that, to further secure said payment, the shares of stock purchased in the Big Wood River Reservoir & Canal Company, Limited, should be and they were thereby assigned and transferred to appellant.

It is apparent that under the terms of this contract appellant is in no better position than it would have been had the land been embraced within a Carey Act entry. By the terms of this contract the land, so far as it could be, and the water rights and certificates of stock were conveyed, or agreed to be conveyed, by way of mortgage, to secure the payment of the sums due to appellant from Lansdon, which makes the provisions of sec. 3160, Rev. Codes, applicable to it, as follows: "Every conveyance of real property other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded." Sec. 3161 defines the term "conveyance" to mean "every instrument in writing by which any estate or interest in real property is created, alienated, mortgaged or incumbered, or by which the title to any real property may be affected, except wills."

At the time the mortgage was given there was nothing on record in the office of the county recorder indicating that there was any lien whatever, either upon the land mortgaged or upon the water right appurtenant thereto, and the record of the case does not disclose that either the mortgagee or respondents had knowledge of any fact which would lead a prudent person to a discovery of the claims of appellant.

The fact that final proof was accepted was an indication that the entryman had obtained a water right which he could mortgage, for, under the provisions of the United States statutes relating to desert land entries, the government would not issue its patent until proof was made that a water right had been acquired by the entryman by purchase or otherwise. This fact and the fact that the mortgagor was actually using the water was sufficient, in the absence of a record or other information to the contrary, to invite the conclusion that the

entryman, who had acquired title to the land, also had title to the water right appurtenant thereto.

Appellant sold this water right and permitted it to be applied to a beneficial use upon, and to become appurtenant to, the land in question. It failed and neglected to give notice of its claim to security, as by law provided, and cannot be heard to complain that the law recognizes as prior and superior the lien of an innocent mortgagee whose conveyance, though subsequent in point of date of execution, is first recorded.

It is contended by appellant that the shares of stock in the operating company are personal property, and that the water right passed by assignment of them and did not become subject to the mortgage on the land.

While shares of stock in an ordinary corporation, organized for profit, are personal property (sec. 2747, Rev. Codes; *State v. Dunlap*, 28 Ida. 784, and cases therein cited on page 802, 156 Pac. 1141), and while this court has held shares in an irrigation company to be personal property (*Watson v. Molden*, 10 Ida. 570, 79 Pac. 503), the fact must not be lost sight of that a water right is, as heretofore shown, real estate, and that in case of a mutual irrigation company, not organized for profit, but for the convenience of its members in the management of the irrigation system and in the distribution to them of water for use upon their lands in proportion to their respective interests, ownership of shares of stock in the corporation is but incidental to ownership of a water right. Such shares are muniments of title to the water right, are inseparable from it, and ownership of them passes with the title which they evidence. (*In re Thomas' Estate*, 147 Cal. 236, 81 Pac. 539; *Berg v. Yakima Valley Canal Co.*, 83 Wash. 451, 145 Pac. 619, L. R. A. 1915D, 292.)

It follows that since respondents' mortgage is a prior lien upon the land and upon the water right appurtenant thereto, their claim to the shares of stock, which evidence that water right, is superior to that of appellant.

The judgment appealed from is affirmed. Costs are awarded to respondents.

Budge, C. J., and Rice, J., concur.