## No. 8908.

### SHAW ET AL. *v.* BOND.

1. PLEADINGS—*Judgment on the Pleadings—Motion—Presumptions.* On motion for judgment on the pleadings the truth of the pleading in question is assumed, and nothing pleaded in contradiction thereof is taken as true.

2. IRRIGATION—*Reservoirs—Canals—Taxation.* A ditch conveying water to a reservoir, whence it is distributed solely for the irrigation of the lands of those entitled to the ditch, is not subject to taxation, separate from the land irrigated. ·

Neither is the reservoir nor the bed thereof.

3. INJUNCTION—*To Restrain the Collection of a Tax,* is allowed, where the tax is levied without authority, and the want of authority is not apparent on the face of the record, e. g., a tax levied upon works for the irrigation of land, used exclusively for watering the land of those entitled to the works.

*Error to Jefferson District Court, Hon. H. S. Class, Judge.*

Messrs. SMITH, BROCK & FERGUSON, Mr. JOHN P. AKOLT, for plaintiffs in error.

Mr. WILLIAM A. DIER, Mr. J. W. BARNES, Mr. JOHN F. MAIL and Mr. GEORGE B. CAMPBELL, for defendants in error.

GARRIGUES, J.

THIS suit in equity by injunction is brought by plaintiffs in error against the Assessor, Treasurer and Board of County Commissioners of Jefferson County to have certain taxes assessed and levied against the dam, the dam and reservoir site, and the inlet ditch or canal of Standley Lake reservoir, declared and adjudged invalid; and to restrain the collection of the tax and the issuance of a tax deed. By the dam and reservoir site is meant the surface

of the earth upon which the dam and banks stand, and the basin or bed of the reservoir inundated.

The complaint alleges that the Reservoir & Irrigation Company, one of plaintiffs in error, was organized to construct, operate and maintain a system of ditches, canals and reservoirs in Denver, Adams, Arapahoe, Jefferson, Boulder, Gilpin, Grand and Weld Counties, Colorado, for the purpose of diverting, storing and distributing to its stockholders only, water for the irrigation of lands owned by its stockholders; that it is a mutual ditch company organized for the purpose of constructing, operating and maintaining a system of ditches, canals and reservoirs, for the distribution of water for irrigation to its stockholders or members only; that its properties have at all times been owned and used exclusively for such purposes, and that its ditches and canals and reservoirs are owned and used exclusively by individuals or corporations who are stockholders of the company, for irrigating lands owned exclusively by such individuals or corporations, or the individual members thereof, and are not subject to taxation separate from the taxation of the land upon which the water right is applied; that it owns ditches, canals and reservoirs for collecting and conveying water from one county, to be distributed in another county or counties; that it owns a certain reservoir called Standley Lake, and its inlet ditch called Croke Canal, situated in Jefferson County, which are integral parts of the irrigation unit, and were constructed, and are operated and maintained, for the purpose of diverting and collecting water in Jefferson County, to be conveyed and distributed in that and other counties for irrigating the lands of its stockholders in that and other counties; that the other plaintiff in error, Alva Shaw, is the duly appointed and acting receiver of the company; that in 1909 the County Assessor, notwithstanding the property was exempt from separate taxation, listed, valued and assessed for taxation purposes in Jefferson County, the dam, dam site, and reservoir site, or bed of the reservoir, which taxes were extended upon the assessment roll

for that year; that the dam and reservoir sites were listed at the value of $18,440.00, and the dam was listed and valued at $40,000.00; that in 1910 the County Treasurer sold the property *en masse* for the taxes of 1909, for the sum of $1,723.46, and issued a tax certificate to the purchaser, and threatens, and is about to issue a single tax deed therefor; that the property was again assessed in like manner for the taxes of 1910 and 1911, which were for those years paid by the holder of the tax certificate; that Croke Canal extends from its headgate in Clear Creek to the reservoir, and was assessed for taxation for the years 1910, 1911 and 1912; that in 1910 it was valued for taxation at $22,530.00, and the tax was $682.93; in 1911 it was valued at the same amount, and the tax was $684.67; in 1912 it was valued at $30,040.00, and the tax was $842.79, and on December 23, 1912, it was sold for taxes, and bid in by the county and a certificate issued to the county; that the time of redemption of the reservoir from tax sales will expire December 24, 1913; that August 2, 1913, the treasurer published the usual notice that the holder of the certificate had made application to him for a treasurer's or tax deed, that the time for redemption would expire December 24, 1913, and unless redeemed on or before that date, a deed would be issued and delivered as provided by law; that the treasurer threatens and is about to issue a deed to the holder of the certificate; that the assessments, levies, taxes and tax sales embrace and apply to the reservoir and the ditch used to divert water from Clear Creek into the reservoir, called Croke Canal, and to no other land or property; that these county officers continue to assert the right to assess the canal and reservoir, and to collect the tax by the sale of the properties; that the levy of the tax has created a cloud upon, and the issuance of a deed will cast a cloud upon, the title of the company to the ditch and reservoir, and result in irreparable damage, for which there is no plain, speedy or adequate remedy at law; that it will be harrassed by a multiplicity of suits, and that a tax deed will disturb its occupancy of the properties, and deprive it

from maintaining and operating the ditch and reservoir, to the irreparable injury of its consumers and stockholders; that it is, and at all times has been ready, willing and able to, and offers and tenders such amount, if any, of the taxes as the court may find to be due and owing. Prayer that the assessments, levies and tax sales be adjudged invalid, and that the issuance of a tax deed be enjoined.

After answers and replications had been filed, the case came on for trial before the court, whereupon defendants moved the court for judgment on the pleadings, which motion the court sustained and ordered the cause dismissed. January 26, 1916, the court overruled the motion for a new trial, and entered a final judgment of dismissal on the pleadings in favor of defendants, and plaintiffs bring the case here on error.

GARRIGUES, J., after stating the case as above:

1. The constitution provides:

"Ditches, canals and flumes owned and used by individuals or corporations, for irrigating land owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed so long as they shall be owned and used exclusively for such purposes."

The statute is substantially the same. Sec. 3, Art. 10, Constitution; Sec. 17, p. 47, Revenue Laws, 1902.

The statute also provides that the term "real estate" includes: First, land; second, minerals under the land; third, improvements upon the land, and that the term "improvements" shall include all buildings, fences and water rights. Sec. 13, p. 45, Revenue Laws 1902.

The judgment being upon defendants' motion for judgment on the pleadings, we must assume for the purposes of the case that the allegations of the complaint are true, and that no allegations of new matter in the answer are true. The first point involved is whether the ditch and reservoir were subject to taxation separate from the lands upon which the water right is used, and the second, whether plaintiffs are entitled to injunctive relief.

We will first dispose of the question of taxation of the canal, then of the dam, and then of the dam and reservoir site. The constitution and statute provide that canals, ditches and flumes owned by corporations and used exclusively to irrigate their lands or the lands of individual stockholders thereof, or owned by individuals and used exclusively to irrigate their lands, shall not be separately taxed so long as they shall be owned and used exclusively for such purpose. This constitutional provision does not exempt such properties from taxation. It provides that they shall not be separately taxed, and in *Empire Canal Co. v. Board,* 21 Colo. 244, we held this to mean that the canal shall not be taxed separately from the land upon which the water is used; that the exemption from separate taxation applies to (a) canals owned by one or more individuals, used exclusively to irrigate their lands; (b) canals owned by corporations, used exclusively to irrigate their lands or the lands of their stockholders; (c) canals owned in part by individuals and partly by corporations, used exclusively to irrigate lands of either or both. In other words, canals owned and used exclusively for irrigation of lands owned by the owners of the canals.

The Farmers' Reservoir & Irrigation Company owns the ditch and reservoir in question. They are used exclusively by its stockholders for the irrigation of their lands, the stock representing the consumer's interest in the canal and reservoirs, the complete ownership thereof being vested in the corporation. The question is whether they are subject to taxation separate from the land upon which the water right is applied. So far as Croke Canal is concerned, it comes within the rule announced in *Empire Co. v. Board,* supra, and is not subject to separate taxation.

In *Kendrick v. Twin Lakes Co.,* 58 Colo. 281, we held a reservoir dam which impounded water in a reservoir for the use of stockholders in a mutual ditch and reservoir company for irrigation could not be separately taxed as an improvement upon the land upon which the dam stands; that the dam had no distinct value as an improvement upon

the land on which it stood, but was a burden; that whatever value the dam possessed was represented and included in the water right, which constituted the essential thing of value, and that such water right, under our revenue laws for taxation purposes, are to be listed and valued like real estate, as improvements on the land upon which the water is used. So neither the Croke Canal nor the reservoir dam of the Standley Lake reservoir are subject to separate taxation.

The inquiry now goes a step further and we must determine whether the land upon which the dam stands, and the land inundated by the water in the reservoir, that is, the bed of the reservoir, is subject to separate taxation, or whether their value is included in the water right similarly to ditches, dams and headgates.

Land is a term narrower and more restricted than real estate, and means the solid part of the earth's surface. Real estate is a broader term, including the land and improvements thereon. Fences and buildings are real estate, but not land. So are water rights. Under our revenue act for the purposes of taxation, real estate includes land, minerals under the land and improvements on the land, and water rights are declared to be improvements on the land where they are used; hence, it follows that water rights are real estate and must be listed and valued like buildings, apart from the land, but as improvements on the land where the water is applied. Land comprising the bed of a reservoir, or the bed of the dam like this, storing water for irrigation, is as much an integral part of the whole system as the land comprising the bed of the ditches and the dam of the reservoir. Water rights of mutual ditch and reservoir companies embrace and include the value of the land comprising the bed or site of the reservoir and dam, and the stock represents the consumer's interest therein, though the title to the property vests in the corporation. Ordinarily the value of a mutual irrigation system depends upon the cost of the enterprise as a whole, which controls to some extent the value of the water rights, and this value includes and

embraces not only inlet and outlet ditches, headgates and dams, but the land upon which they stand and the bed of the reservoir as well. When water rights are taxed in connection with the land they irrigate, the unit is taxed as a whole. The situs for taxation is declared by statute to be upon the land where the water is used. There can be no material distinction for purposes of separate taxation, between the ditch, the headgate and dam, and the bed of the dam and reservoir which supplies the water to be carried through the ditch, where all are owned by a mutual irrigation company and the water used exclusively by its stockholders to irrigate their lands. The same rule which holds that the value of the canal, headgate and dam is represented and included in the value of the water right applies with equal force to the land upon which the dam stands and the bed of the reservoir. We therefore conclude that the bed of the reservoir and the land upon which the dam stands are not subject to separate taxation.

2. The second point is whether plaintiffs are entitled to injunctive relief. This tax was not merely irregular, erroneous or illegal. The property was not subject to separate taxation, and the tax imposed was therefore unauthorized. On the face of the record, however, it appeared to be valid, which constitutes a cloud upon the title if not corrected by judicial decree, and unless the assessment of taxes on the property in the future is restrained, there will be nothing to prevent its repetition. The object of the action is not only to rectify the error in this particular instance, but to establish as well the correct rule relative to similar cases in the future.

We think a tax assessed where no tax is authorized is void, and if this does not *prima facie* appear from the face of the record, a suit in equity will lie to have it so declared. Where an exemption from taxation has been established, for property used exclusively for religious worship, schools or charitable purposes, we have never hesitated to grant an injunction restraining the collection; and the same rule should apply to mutual ditch and reservoir companies. We

are therefore of the opinion that plaintiffs were entitled to injunctive relief.

The judgment is reversed and the cause remanded.

Reversed and remanded.

Decision *en banc*.