## No. 13,109.

### San Luis Power and Water Company v. Trujillo, County Treasurer.

(26 P. [2d] 537)

Decided October 16, 1933. Rehearing denied November 6, 1933.

Mr. L. H. LARWILL, Mr. D. K. WOLFE, JR., Mr. MALCOLM LINDSEY, for plaintiff in error. Messrs. HUGHES & DORSEY, of counsel, on petition for rehearing.

Mr. JOHN B. BARNARD, Mr. E. H. ELLITHORP, Mr. CLARENCE L. IRELAND, Attorney General, Mr. PAUL P. PROSSER, Attorney General, Mr. GEORGE A. CROWDER, Deputy, for defendant in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

We will herein refer to the plaintiff in error as the water company and the defendant in error as treasurer.

In April, 1931, the treasurer filed this action to obtain a declaratory judgment to the effect that the Sanchez reservoir and its appurtenances, being the irrigation system of the water company, is subject to taxation for the years beginning with 1907 to date. He alleged the corporate existence of the water company as a Colorado corporation at all times doing business in Costilla county, with its principal office in that county; that for profit, said company was the operating owner of the Sanchez system of reservoirs, ditches and other enumerated reservoirs, ditches, canals and like appurtenances; that the water company was the owner since 1907 of certain water and water rights that it then and thereafter acquired and used in connection with domestic and allied irrigation purposes, all in Costilla county; that during all the years from 1907 to 1931, all of the properties of the water company have been omitted from the assessment roll of Costilla county, and that the assessor of Costilla county has refused to assess said property; that section 7321 of the Compiled Laws of Colorado, 1921, makes it the duty of the treasurer in such cases to assess the property and charge all arrearages which should have been assessed in former years. He further alleged that the water company made the claim that the Sanchez system was not taxable, separate and apart from the lands irrigated thereby, under section 3, article 10, of the Colorado Constitution and section 7198, Compiled Laws of 1921.

The treasurer makes the contention that these constitutional and statutory provisions do not apply, because the water and water rights of the Sanchez system were not used exclusively for irrigating the lands of the own-

ers of said system, but that the company rented and leased same to the owners of lands upon a yearly rental basis and that water users were not the owners of the system or its water rights.

After general and special demurrers were overruled, the water company answered, presenting more fully the issues raised by demurrer, and alleged that under the company contracts used for water rights and corresponding interests in the reservoir system, that its system and water and water rights are not taxable under the state Constitution and statutes, and further that the water rights were already assessed in connection with the lands to which same were pertinent and that a separate assessment would constitute double taxation; and as a third defense it raised the constitutionality of the Declaratory Judgments Act and alleged that the facts stated in plaintiff's complaint are not sufficient to warrant the court in entering a declaratory judgment, and attached to its answer, Exhibits A and B, being forms of water contracts used by the water company. The treasurer replied admitting that the lands irrigated by the water from the Sanchez system are valued for the purpose of assessment as irrigated lands, and that the valuation of non-irrigated lands is much lower in Costilla county. The water company demurred to the reply—which was overruled—and filed written motion for conclusions of law by the court which was denied and on motion of the treasurer, the trial court entered judgment on the pleadings, to which the water company assigns error.

Three questions are before us for determination. First, the constitutionality of the Declaratory Judgments Act. Second, Would the taxation of the Sanchez system be double taxation? Third, Are the water users fractional owners of the water rights and owners of an interest in the system so as to bring the system, its water and water rights within the statutory and constitutional prohibitions against separate taxation of irrigated works?

Those sections of the Constitution and the statutes involved here are as follows:

Article X, section 3 of the Constitution of the state of Colorado: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal; Provided, That the personal property of every person being the head of a family to the value of $200 shall be exempt from taxation. Ditches, canals and flumes owned and used by individuals or corporations, for irrigating land owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed so long as they shall be owned and used exclusively for such purposes."

Section 7321, Compiled Laws of 1921: "If any taxable property shall be omitted in the assessment of any year or series of years, and not listed upon the assessment roll, when discovered it shall be assessed by the assessor for the time being and inserted on the assessment roll, and all arrearages of taxes which should have been assessed and paid in former years charged thereon, or in case of the failure or neglect of the assessor the same shall be assessed by the treasurer, and by him inserted in the warrant with the arrears of taxes as provided for 'additional assessments.' The provisions of this section shall include omissions made by the state board of equalization [tax commission] as well as by the county assessor."

Section 1 of the Colorado Declaratory Judgments Act approved March 20, 1923, confers jurisdiction on courts of record "to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have

the force and effect of a final judgment or decree." Section 2 provides that, "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinances, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder." Section 3, "A contract may be construed either before or after there has been a breach thereof." Section 6, "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Section 7, "All orders, judgments and decrees under this act may be reviewed as other orders, judgments and decrees." Section 8, "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper."

We will first determine the constitutionality of the Declaratory Judgments Act, since the judgment in this case was obtained under that act. This court, on a number of occasions, has been called upon to determine propositions presented under the Declaratory Judgments Act, but in those cases, the act has never been attacked upon constitutional grounds. Some courts have been slow to recognize the constitutionality of declaratory judgment acts, generally upon the theory that judgments thereunder would be no more or less than advisory opinions, the rendering of which is a nonjudicial function except when specially authorized, and upon the broad general theory that the proper office of the judiciary was to redress wrongs. It has been said in that connection that the practice of allowing controversial parties to seek and have declaratory determination of their interests by the courts would congest the work of courts; but that objection is speculative and not sound, for the basic reason

that it matters not what course may be followed, if at the end of the day, the court has declared a timely determination of such questions. Its work is well done, if it has prevented, as it likely would, extended expensive litigation, and obviated the animosity between parties that is often attendant upon litigated cases.

Preventative relief in some instances is just as properly a matter of judicial function as remedial relief and if given by a declaratory order in the construction of a statute, it is res judicata as to the questions of construction raised between the parties and passed upon. The legislature is without power to require courts to exercise nonjudicial functions; but it is not without the power to impose upon courts jurisdiction over certain enumerated actions seeking declaratory judgments on matters that lend themselves to and receive judicial determination in otherwise litigated cases, as it at once appears, such would not be nonjudicial in their nature.

The courts are the servants of the people and modern conditions require that their function be of usefulness in official and commercial life. They should not shirk the task when the necessity of an adjudication is sufficiently urgent. A judgment in any case is merely the affirmation of a liability. 1 Black on Judgments (2d Ed.), §4. The judgment, after performing its office of declaring the existence of a certain liability, leaves the parties to pursue the remedies which the law provides. The questions presented here are not uncertain or hypothetical, and because they are presented in an action seeking a declaratory judgment are no less justiciable than if presented by injunction or otherwise. *Nashville, etc., Ry. v. Wallace* (U. S.), 53 Sup. Ct. 345.

In many matters, such as the construction of wills, where the rights of many persons, sometimes unknown, are involved, the courts have not hesitated to declare and determine such rights and interests, and such is an expeditious way of settling the matter in doubt without leaving the parties to pursue their own view,

sometimes with disastrous results. The official duties of the treasurer of Costilla county, Colorado—as they relate to his office—to the state of Colorado and to the property and interests of the water company are affected by the construction of certain statutes, and it appears as a vital necessity that in order to safeguard the interests of the people of this particular political subdivision, and the interests of the water company, as well as direct the official course of the treasurer, a judicial construction of such status be had. The facts are sufficiently ripe for judicial decision. We believe the Declaratory Judgments Act to be constitutional and so hold. To pursue a further discussion of our reasons for so holding, would be but a general review of the decisions in many states that hold similar acts constitutional. The case of *Anway v. Grand Rapids Railway Co.*, 211 Mich. 592, 179 N. W. 350, 12 A. L. R. 26, cited with confidence by counsel for the water company, does not correctly reflect the law, and the reasoning in that case is rejected in *Nashville, etc., Ry. v. Wallace, supra.* The Anway case has been cited, but not followed, in the following cases. *State, ex rel. v. Grove,* 109 Kan. 619, 201 Pac. 82; *State, ex rel. v. Wooster,* 111 Kan. 830, 208 Pac. 656; *McCrory Stores Corp. v. Braunstein,* 102 N. J. L. 590, 134 Atl. 752; *Zoercher v. Agler,* 202 Ind. 214, 172 N. E. 186; *Washington-Detroit Theater Co. v. Moore,* 249 Mich. 673, 229 N. W. 618; *Milwaukee v. Chicago & N. W. R. Co.,* 201 Wis. 512, 230 N. W. 626; *Grosse Pointe Shores v. Ayres,* 254 Mich. 58, 235 N. W. 829; *Lynn v. Kearney County,* 121 Nebr. 122, 236 N. W. 192; *Sheldon v. Powell,* 99 Fla. 782, 128 So. 258; *Miller v. Miller,* 149 Tenn. 463, 261 S. W. 965; *Patterson's Executors v. Patterson,* 144 Va. 113, 131 S. E. 217.

The two remaining questions, viz., double taxation, and Are the water users fractional owners of the water rights and interest in the system so as to put the system, its water and water rights within the prohibition against separate taxation? can well be considered and discussed together. Counsel for the water company

contend that taxes on its property have been assessed and paid by the owners of the lands irrigated from its system, and that the contract users of the water and of the water rights are owners of an interest in the property of the irrigation system. We believe this to be an unsound contention. Every case must be anchored by its own facts and the contracts between the water company and the water users, Exhibits A and B, disclose on their face the true relationship and position and interest of both parties thereto. The exhibits are too lengthy to be herein set out in full and we will hereafter quote such parts of the contracts as we feel are controlling. It is to be remembered that these contracts are the contracts of the water company, prepared by it for its use, and any uncertainty in such a case should be construed against the water company.

The phrase in Exhibit A, paragraph 1: "The amount of water the delivery of which is herein contracted for," unmistakably shows this to be a contract for delivery of water by the company. Paragraph 2: "The consumer shall not waste any portion of the water delivered to.........and as soon as.........shall have used a quantity thereof reasonably sufficient for the purposes herein named," disposes of any question as to the ownership. An owner is "He who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and do with as he pleases—even to spoil or destroy it, as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right." Bouvier's Law Dictionary, Rawles Third Revision, 2437. Paragraph 3: "And all right of whatsoever kind or character to have and receive from the Company the use of water * * *." Paragraph 4: "The Company shall retain the ownership, and shall have sole charge and control of; (a) the operation and maintenance of all its said irrigation system and works, including its reservoirs now existing, or such as may hereafter be constructed or enlarged; (b) the appropria-

tions and priorities of its said irrigation system." Paragraph 7: "The prior, superior and lawful right to the Company in its said water system and all thereof, and in and to the water priorities, appropriations, adjudications and decrees held or owned by it, and the water in said reservoirs stored and through said ditches, canals and distribution system flowing and thereby appropriated or diverted, also in and to all seepage or drainage waters, or underground flows or return waters, is by the Consumer hereby expressly acknowledged and confessed." Paragraph 8: "The Consumer covenants and agrees that this instrument shall constitute the sole right of the Consumer to receive water from the reservoirs, ditches, canals and irrigation system of the Company, and to pay for the use of said water and for the transmission, distribution and carriage of the same, and for the rights and privileges herein secured to him, such annual charge as may be prescribed by the Company within the hereinafter mentioned limitations." Paragraph 10: "The relation of this contract established is that of contractor and contractee, and not one of optionor and optionee; * * * and so long as, and whenever, the Consumer shall receive water for irrigation from any source the same shall be considered as purchased and received from the Company under the terms and conditions herein provided for."

The increased assessed valuation of the consumers' lands is reflected by the availability of water for irrigation purposes under these contracts. The true value of said lands is augmented or diminished by the amount of water available for purchase or rental under the consumers' contract, and the revenue received by the company from the annual payments by the consumer is retained by the company as its sole and exclusive property. Nowhere is it indicated in these contracts that the consumer is, or ever becomes, the beneficiary of, or entitled to, any part of the revenue received by the company from similar contracts with other consumers or has any voice

in the use or control thereof. The consumer has no separate property in the irrigation system, its water and water rights. The title to such has been cautiously reserved by the water company in its own contract and the company reserved to itself the right to do anything it desired with any of its property subject to the rights to receive water granted by the contract, and we believe that, briefly summed up, the only rights granted to the consumer are in the words of the contract, "the use of the water and the transmission, distribution and carriage of same."

The ownership of this system, its water and water rights being in the water company, it is separately taxable and does not fall within the exemption of the Constitution, that "Ditches, canals and flumes owned and used by individuals or corporations, for irrigating land owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed so long as they shall be owned and used exclusively for such purposes." It is nowhere to be found that these contract users are members of the water company or that the water company is the owner of any of the lands irrigated from the system, and that is further negatived by the contention of the water company that its taxes have been paid by and on account of the payment of taxes by the owners of the lands irrigated under its contracts. "Exemptions from taxation are to be strictly construed, and cannot be enlarged by construction, for unless the privilege is limited to the very terms of the law under which it is claimed, its operation would be extended beyond what was intended." *Murray v. Montrose County,* 28 Colo. 427, 429, 65 Pac. 26.

The property herein described, being now and at all times mentioned the property of the water company, it was subject to taxation and not exempt, and the company has escaped its just proportion of the burdens of taxation. What it has escaped and failed to pay has been unjustly put upon the shoulders of the other taxpayers,

and if such property, as in this case, has been omitted in the assessment of any year or series of years, when discovered, it shall be assessed by the assessor and as in this case, on account of the failure or neglect of the assessor to make such assessment, it is the duty of the treasurer to make the assessment and insert in the warrant such arrearage as may be determined.

The judgment of the trial court was correct and is affirmed.