No. 14,031.

BEATY v. BOARD OF COUNTY COMMISSIONERS OF OTERO COUNTY.
(73 P. [2d] 982)

Decided November 15, 1937.

Mr. PERRY E. WILLIAMS, Mr. E. C. GLENN, for plaintiff in error.

Mr. CHARLES E. SABIN, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THE parties appear here relatively as in the lower court and we will refer to them as plaintiff and defendant. The facts are stipulated.

During the years 1927 to 1932, inclusive, the period involved in this suit, plaintiff owned 458 acres of land in Otero county, Colorado, all lying under the canal owned by the Reorganized Catlin Consolidated Canal Company, a mutual ditch company. For the irrigation of this land the plaintiff owned 477.44 shares of the stock of the ditch company. By virtue of the ownership of this stock she was entitled to draw her pro rata part of the water flowing in the company's main canal at any given time, as were all stockholders. In providing the apportionment of water between the stockholders, the bylaws of the canal company contemplated that one share of stock represented the amount of water required to irrigate one acre of land. During each of the years mentioned a part of plaintiff's lands have not been irrigated by reason of seepage or some other condition interfering with cultivation. Because of this circumstance, and her normal excess share ownership, the plaintiff at all times had more shares of water stock than she owned acres of irrigated and cultivated land, which excess varied throughout the years to the extent of the fluctuating acreage of waste land. As a result of these factors plaintiff annually has used and enjoyed the use of more water per acre than persons having only one share for each acre of land. When she was not using the excess water it was permitted to flow in the ditch and inured to the pro rata benefit of the other stockholders under the ditch. During each of said years the irrigated acreage of the plaintiff was assessed as irrigated lands and at an amount equal to the valuation placed upon other like lands having one share of stock or less per acre for the irrigation thereof. Also her right to the use of additional water was assessed as improvements on land on the basis of the number of shares of canal stock she held in excess of the number of acres of irrigated land assessed to her. These assessments appeared in that column of the plaintiff's tax schedule headed: "Improvements on land," using the descriptive words: "..sh. extra (or ex.) water," fol-

lowed by the varying valuation fixed for the respective years. It is not disputed that the values so fixed were fair and proper, if the thing assessed is subject to taxation. No other assessment of any kind or character has been made or attempted to be made by the assessor during any of the years involved for this right to the use of excess water. Plaintiff voluntarily paid the taxes so levied, except those for 1932, without protest and took no action of any kind, either to prevent assessments being made or to avoid payment of the tax, until 1933, when she applied to the county commissioners of Otero county for a refund of the taxes paid and abatement of the 1932 tax, all of which she claimed were erroneously assessed and levied. The commissioners denied this application and the instant proceeding was instituted in the district court ostensibly as an appeal from the action of the county commissioners, but, in reality, plaintiff asserts, as an original proceeding to determine the issue.

Admittedly the taxes paid during the years involved were discharged without protest and the plaintiff never availed herself of the administrative statutory remedies for relief from the allegedly illegal assessments. This proceeding likely could be disposed of adversely to plaintiff for her failure to so proceed, but in view of the novel nature of her contention we have deemed it proper to express our views on the issues involved. The trial court, likewise proceeding on the merits, held adversely to plaintiff.

Plaintiff contends that the thing assessed for taxation was corporate stock and, as such, exempt from taxation under section 7383, C. L. 1921 ('35 C. S. A., c. 142, §205), and, in addition, as stock in a mutual ditch company was nontaxable under section 3, Article X, of the Colorado Constitution—the applicable portion being hereinafter quoted—and section 7199, C. L. 1921 ('35 C. S. A., c. 142, §23), enacted in pursuance thereof.

On the second premise plaintiff argues that when her cultivated lands were assessed and taxed as irrigated

lands on the basis of one share of stock per acre, her tax liability for her water rights was complete and the assessment of the additional right represented by her excess stock, as an improvement on her land, amounts to a separate assessment violative of the constitutional provision last mentioned.

Section 1, article IV, of the bylaws of the canal company, so far as it is pertinent, provides: "The stock to be issued only to water right owners in the Catlin ditch evidenced by water deeds issued by The Catlin Consolidated Canal Company and the amount of stock to which each water right owner is entitled to be determined as follows, to-wit: To each said water right owner there shall be issued, of the capital stock of this company, fully paid the same proportion of the whole of the stock of said company as the water right or water rights each owner therefor has bears to the whole amount of the water rights sold by the said The Catlin Consolidated Canal Company; and upon issuing said stock each person named in the certificate as a holder thereof shall sign a relinquishment of all right under the water deeds issued by the Catlin Consolidated Canal Company; and an acceptance of said stock in lieu of said water deeds as evidence of his, her or its right to the use of water from the Catlin Canal."

It is evident from this provision that prior to the issuance of the stock of the present canal company, the individual water rights of the consumers under the ditch of its predecessor was evidenced by water deeds, which deeds the bylaws required to be surrendered for stock issued by the present company, which was accepted by the consumer "in lieu of said water deeds as evidence of his, her or its right to the use of water from the Catlin Canal."

Section 2, article IV, of the bylaws of the canal company is as follows: "Each holder of corporate stock shall be entitled to receive from the company's canal water for domestic purposes and for the irrigation of lands lying

under the line of said canal, or extension thereof, owned or controlled by the said shareholder, in the following amount, to-wit: For each share of capital stock eighteen one-thousandths (.018) of one cubic foot of water per second of time; that is to say for each eighty (80) shares of stock one and forty-four one-hundredths (1.44) cubic feet of water per second of time, being the amount required to irrigate eighty (80) acres of land. Each certificate of stock shall designate the lands upon which the stockholder intends to apply the water represented by that certificate and such water shall not be applied to any other land than that specified in the certificate unless a new certificate of stock is issued describing the land to which it is proposed to change the water and no such new certificate shall be issued until the old certificate has been surrendered to the secretary for cancellation. Provided, the board of directors may in its discretion upon proper, sufficient and satisfactory showing being made permit a temporary delivery of the water represented by any certificate of stock to lands other than those named therein.''

The stock certificates held by the plaintiff described her 458 acres of land as the limited situs of the application of the water she was entitled to receive from the canal. No transfer of the certificates or request for a changed use of the water was made during the period involved in this suit and no necessity arises for a discussion of any resulting questions which might have arisen from these contingencies. It definitely appears that this mutual canal company was organized for the convenience of its members in the distribution to them of their water for use upon their lands in proportion to their respective interests. Under these circumstances the stock certificates of the canal company, in the form in which they were issued and held by the plaintiff, were merely the muniments of title to her water right, which water right, the thing of value owned by her, unquestionably was real estate and not corporate stock. This rule was clearly stated by Mr. Justice Butler in his concurring opinion, in

which the majority of the court joined, in the case of *Comstock v. Olney Springs Drainage District,* 97 Colo. 416, 50 P. (2d) 531, where it is said: ''Counsel for the plaintiff in error admit—and it is the law—that water rights for irrigation are real property. They say, however, that shares of stock are personal property. That is true of shares of stock in corporations, including irrigation corporations, organized for profit; but where the company is a mutual irrigation company, or, as here, a mutual reservoir company, organized, not for profit, but for the convenience of its members in the management of the irrigation system and in the distribution to them of water upon their lands in proportion to their respective interests, ownership of shares of stock in the corporation is but incidental to ownership of a water right, which is appurtenant to the land upon which the water is used. See *Ireton v. Idaho Irrigation Co.,* 30 Idaho 310, 317, 164 Pac. 687, 689. In *Kendrick v. Twin Lakes Reservoir Co.,* 58 Colo. 281, 144 Pac. 884, we had occasion to pass upon the status of the capital stock of one of the companies involved here. We said: 'The corporation is purely a mutual reservoir company, in which the capital stock stands for and represents the consumer's interest in the reservoir, canal *and water rights.'* ''

On this point plaintiff additionally asserts that the language of the assessment, which we have hereinabove quoted, was such as to show that the thing assessed was corporate stock and that the defendants are thereby bound. It is true, under the stipulated facts, that in arriving at the valuation of the water rights to be assessed the assessor adopted the measuring stick suggested by the bylaws of the corporation of one share of stock to each acre of land and determined the amount of the additional water right by deducting from year to year the number of acres actually irrigated by the plaintiff from the total number of shares of stock evidenced by certificates owned by her. The mere fact that in the description in the schedule devoted to improvements on real estate the assessor

used the abbreviation ''sh.,'' apparently indicative of ''shares,'' in describing the extra water right, does not change the character of the assessment.

■ We do not perceive, under the peculiar facts in the case at bar, how it logically can be argued that the excess stock of plaintiff limiting the use of the water it represents to her lands, is per se tax exempt as corporate stock under section 7383, supra, when it is conceded that the remaining portion of this identical stock on a share per acre basis is the water factor or right which confers upon her cultivated acres the character of irrigated land and makes it taxable as such.

Discussing now the second question involved.

■ Section 3, article X, of the Colorado Constitution, in so far as it pertains to the subject matter under discussion, provides: ''Ditches, canals and flumes owned and used by individuals or corporations for irrigating land owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed so long as they shall be owned and used exclusively for such purposes.'' It will be observed, as is pointed out in the case of *Shaw v. Bond,* 64 Colo. 366, 171 Pac. 1142, that this constitutional provision does not *exempt* such properties from taxation, but only requires that they shall not be separately taxed. In *Kendrick v. Twin Lakes Reservoir Co.,* 58 Colo. 281, 144 Pac. 884, and in *Shaw v. Bond,* supra, this court under the terms of our statute, section 7193, C. L. 1921 ('35 C. S. A., c. 142, §17), reading in part as follows: ''The term 'improvements' includes all buildings, *water rights,* structures, fixtures, and fences erected upon or affixed to land,'' decided that water rights are to be listed and valued for tax purposes as improvements on the land upon which the water is used.

We therefore conclude that this water right, although represented by the stock certificates described, was properly included in plaintiff's tax schedule as an improvement to the land in arriving at the total valuation for tax purposes to be placed upon her real estate.

Thus the case at bar is distinguished from the case of *Commissioners v. Cortez Company,* 81 Colo. 266, 254 Pac. 996, principally relied upon by the plaintiff, where the thing assessed was shares of stock of a mutual ditch company which were assessed as such and not as improvements to land of the taxpayer.

The propriety of the result of this assessment from the standpoint of an equitable valuation of plaintiff's real estate, which under our revenue laws is the total value of the land and the improvements thereon, can hardly be denied. Of necessity, under Colorado's theory of taxation, the tax value of farm real estate must vary in direct proportion to the worth and extent of the improvements to the land, whether they be building, structure, fence or water right. *San Luis Co. v. Trujillo,* 93 Colo. 385, 26 P. (2d) 537. In securing this additional water, especially in view of the stipulated fact that the allotted ratio of one share of stock for each acre of land did not always provide sufficient water for thorough irrigation, the plaintiff definitely increased the actual, as well as the tax, value of her farm as a unit, and she cannot rightfully complain of the result of the assessment in issue.

The judgment is affirmed.

Mr. Justice Bouck dissents.

Mr. Justice Bouck, dissenting.

From the majority opinion I dissent on the ground, among others, that it is wholly inconsistent with, and exactly contrary to, the decision of this court in *Commissioners v. Cortez Co.,* 81 Colo. 266, 254 Pac. 996, a perfectly parallel case. The opinion there, by Mr. Justice Denison, is brief, and the statement of facts is not elaborate. However, I have made an examination not only of the briefs in that case, but also of the original record, now remaining on file in this court. The record contains a remarkably keen, fair and illuminating analysis which the late W. N. Searcy, the trial judge, made of the facts

and the law. The complaint of the plaintiff here is almost word for word identical with the complaint in the Cortez Co. case, and a careful comparison of the two cases, pleading by pleading, fact by fact, and argument by argument, discloses nothing that logic or justice could pronounce a substantial difference in fact or principle between the two.

As against the Cortez Co. case, the language used by Mr. Justice Garrigues in *Shaw v. Bond,* 64 Colo. 366, 171 Pac. 1142, cannot matter. The decision there being in favor of the exemption claimed, the language referred to is purely dictum.

The majority opinion's quotation from the opinion of Mr. Justice Butler in *Comstock v. Olney Springs Drainage District,* 97 Colo. 416, 50 P. (2d) 531, cannot aid us here. The question then under consideration was whether a drainage district assessment was effective against the land and its water rights or merely against the land itself. There could have been no other reasonable decision on that proposition. It simply does not touch the question before us, namely, whether the Colorado Constitution and statutes exempt certain property from general taxes.

*Kendrick v. Twin Lakes Reservoir Co.,* 58 Colo. 281, 144 Pac. 884, is likewise inapposite, as it does not involve the question here before us.

Lack of time forbids further discussion at present.