UNION WATER POWER COMPANY, Appellants,

*vs.*

CITY OF AUBURN.

Androscoggin.    Opinion March 2, 1897.

*Tax.    Water Power.    Dam.    Stat. 1895, c. 122.*

Water as an element is not property, any more than air; but when used, its potential power becomes actual by operating upon real property, thereby giving it value and that value is the basis for the purposes of taxation.

*Held;* that the plaintiff's dam and the land upon which it stands within the city of Auburn,—the established place of business of the plaintiff corporation being in the city of Lewiston and where the power from the dam is applied,—may be properly taxed in Auburn at a reasonable valuation, exclusive of the

water power created thereby.  Such water power is potential and not taxable, except indirectly in the valuation of mills with which it is used.

See *City of Auburn* v. *Union Water Power Company*, post, p 71.

ON EXCEPTIONS BY DEFENDANTS.

This was a petition of the Union Water Power Company, of Lewiston, filed in this court sitting below, praying for an abatement of city, county and state taxes assessed by the assessors of the city of Auburn upon a portion of its real estate and property rights in that city.  The proceeding in this case was under the statute of 1895, c. 122, and after the assessors of the city of Auburn had refused to make an abatement upon the plaintiff's petition and application.

The grounds upon which the abatement was claimed and set out in the petition were as follows :—

First.   Because the assessment and valuation of the property of said company as above set forth is greatly in excess of its value.

Second.   Because the property of said company is not rated and valued equitably and proportionally as compared with other property of like nature and kind in said Auburn.

Third.   Because the assessors have included in said assessment and valuation, property and property rights for which the said corporation is not liable to be taxed in said city.

Fourth.   Because it did not have, possess or own the water power and water rights in the city of Auburn upon which said tax was assessed to it, as hereinbefore set forth.

Fifth.   Because said tax is illegally and improperly assessed.

The plaintiff introduced evidence to show the following facts :—

That there is a dam across the river at Lewiston Falls composed of four granite structures called Dams No. 1, 2, 3, and 4, for convenience ; that the river is the dividing line between the cities of Lewiston and Auburn ; that dam No. 1 adjoins the Auburn shore ; that the length of these dams is as follows: No. 1, 136 feet ; No. 2, 269 feet ; No. 3, 147 feet ; No. 4, 159 feet ; the heights varying from 8.70 to 16 feet ; that the structures are all built with a cut granite face on the down-river side, and the top of the same material, while the backs are made of rough stone ; that

these dams flow back some two or two and one-half miles, and that the Union Water Power Company owns the right for such flowage; that dam No. 1 makes its connection with the Auburn shore at and against the Auburn abutment of the Maine Central Railroad bridge, and that the company owns no land in Auburn at the end of the dam, nor below it, nor in its vicinity, other than the ice house lot referred to in the case and taxed as a separate item; that the town line between Lewiston and Auburn intersects the dam at the extreme westerly end of dam No. 2, so that it may be said in general terms that dam No. 1 only is in Auburn; that these dams were built in 1863 and 1864; that the total cost of the four dam structures at the time they were built was $86,977.33; that dam No. 1 represents less than twenty per cent of the original total cost, which would make the cost of this dam about $18,000; that this dam No. 1 could now be reproduced for some $10,000 to $11,000; that the total available constant power which can be created by these dams is about 13,000 horse-power; that all but 600 to 1,000 horse-power of this total is owned by various mills in Lewiston under a contract giving them a perpetual right to draw the same in accordance with the terms of the leases; that the 600 to 1,000 horse-power not covered by the leases is used and paid for by the mills in Lewiston in addition to that owned by them by permission of the Union Water Power Company without any contract for its permanent use, and is excess water.

The Union Water Power Company are the owners of this whole dam system and flowage rights, with the canals, gates, and water ways which make the water power available for power in Lewiston and subject to the contracts or leases above referred to, held by the various mills and other parties using the water for power in Lewiston. It also owns mill sites and other lands in Lewiston. There are no gates, canals, or water ways in Auburn by which any part of this water could be used for power there, nor does the company own any land in Auburn upon which this power could be used.

The assessors of Auburn assessed a tax for the year 1894 upon the dam and water rights on a valuation of $500,000 and upon the

ice house lot on a valuation of $5,000. This tax was levied by a supplemental assessment under date of February 4, 1895. The Union Water Power Company seasonably filed its petition for an abatement of this tax, which was refused by the assessors, and the company took its appeal to this court as before stated.

This appeal was heard by the presiding justice, who reduced the valuation upon the dam and rights connected therewith to $20,000 and upon the ice house lot to $2,000. No exception was taken to the latter, but to the former the defendant took exception.

Upon the hearing in the court below the defendant moved the presiding justice to make the following findings:—

First:—To find as matter of fact upon the evidence introduced at the hearing, that the water power, created by the granite dam of the Union Water Power Company mentioned in said supplementary assessment, is appurtenant to said dam and to the real estate of said Union Water Power Company flowed thereby, and that, so far as the same is situate within the limits of the city of Auburn, it was properly taxable therein and legally subject to the supplementary assessment aforesaid.

Second:—All that is asked in the foregoing request, as a finding of fact, is also hereby respectfully requested of the presiding justice to be made as a ruling of law upon all the evidence in the case, or upon such findings of fact as the presiding justice shall make therefrom.

These requests were refused by the presiding justice except as appears in the following findings and rulings:

I find as a matter of fact, and rule as a matter of law, upon all the evidence introduced, that the water power created by the granite dam of the Union Water Power Company named in the said supplementary assessment, is appurtenant to said dam and to the real estate of said company flowed thereby, in the sense that the capacity of such dam and real estate for valuable use is fully considered in fixing their valuation in the city of Auburn; but find and rule that it is not appurtenant to such dam and real estate in the sense that the water power, which is taxed in connection with the mills in the city of Lewiston, can be a distinct subject of taxation in the city of Auburn.

To these rulings and findings the defendant took exceptions. A full report of the evidence introduced at the trial was made a part of the exceptions.

*W. H. White, S. M. Carter,* and *J. A. Morrill,* for plaintiff.

*N. W. Harris, J. A. Pulsifer, W. W. Bolster, A. R. Savage, J. W. Symonds, D. W. Snow* and *C. S. Cook,* for defendant.

SITTING: PETERS, C. J., WALTON, EMERY, FOSTER, HASKELL, STROUT, JJ.

HASKELL, J. This is an appeal from the action of the assessors of Auburn in refusing an abatement of taxes. It comes up on exceptions to the rule for valuation applied below to a dam from the centre of the river to the Auburn shore holding back water that is taken by canal on the opposite shore in Lewiston and there used for mill power.

It is contended that Auburn may assess the power created by the dam within its own limits although applied elsewhere. This contention seems to have been partially sustained by the court below, and we think it erroneous. Water power until applied to mills is potential, not actual, in the sense that it is property subject to taxation. When applied to the mills it becomes a part of the property, thereby giving them value, the proper subject of taxation. It then becomes the main element of value, not as water, not as power, but as an integral part of the mills themselves. Without it, what value could a water mill have? If the rule should be held otherwise, it would overturn the present method of taxation throughout the state. We have three principal rivers, taking their rise in lakes in the northern wilderness. At the outlet of these lakes immense dams hold back and store water for the use of mills below. If the rule of taxing the potential use of water should be adopted, it would send the principal part of the power of these rivers for taxation into unorganized and remote districts, and deprive cities and towns of that element to be considered as estimating the value of water mills for purposes of taxation. Under that rule, their value might be almost nominal,

because their power is the controlling agency that makes value. But it is said that the owner of the dam may not be the owner of mills. That he simply stores up water for sale to the mill owner. That should make no difference. The water itself is not property, although he alone may use it. When he does so, the power it produces attaches to the mill and becomes an element in the value of the mill. When he sells it, the same result follows as if he applied it to his own mill. The mill where it is applied becomes the more valuable thereby. It there, indirectly, becomes the subject of taxation as a part of the mill property. The water in a mill pond cannot be regarded as property apart from the mill that uses it, and separate ownership makes no difference. Water as an element is not property any more than air. When used, its potential power becomes actual by operating upon real property and thereby giving it value, and that value is the basis for the purposes of taxation.

The first case brought to our notice is *Boston Mfg. Co.* v. *Newton*, 22 Pick. 22, (1839), the facts of which were precisely like the facts in the case at bar in all material particulars. The plaintiff owned a dam across Charles river, one-half in Newton and the other half in Waltham. The mills were wholly in Waltham. Newton assessed one-half the dam and one-half the water power. The tax was paid under protest, and suit brought to recover it back as an unlawful assessment upon the water power. Mr. B. R. Curtis was of counsel for the plaintiffs, and Mr. Rufus Choate counsel for the defendants. The opinion of the court was by Chief Justice Shaw, and the court says: "Water power for mill purposes is not a distinct subject of taxation. It is a capacity of land for a certain mode of improvement, which cannot be taxed independently of the land.

"But the objection to this mode of taxation is not the only or the principal objection to the tax in question. The court are of opinion that the water power had been annexed to the mills, that it went to enhance the value of the mills, and could only be taxed together with the mills, as contributing to increase their value. As the mills were wholly situated in Waltham, and were taxable

there, they were not liable to be taxed in Newton." That doctrine has been recognized in Massachusetts ever since.

In *Lowell* v. *Co. Commissioners*, 6 Allen, 131, a corporation owned certain canals with appurtenances whereby it was enabled to furnish certain mills, owned by its stockholders, water for power. For nine months in the year it had a surplus of water for sale to other takers, and the court held that the canals were assessed in the valuation of the mills to the proportion of the power furnished to them, and that their value for retaining the surplus of water, if any, might be directly assessed to the corporation, but does not authorize the assessment of water power, per se. In this state, very likely the canals would be assessed wholly to the owner, and the power included in the assessment of the mills only.

In *Pingree* v. *Co. Commissioners*, 102 Mass. 76, it was held that a dam and structures were taxable independent of the water power which they had created. The court says: "They are capable of being estimated by a reasonable valuation, not dependent upon nor including the worth of the water power with which they are connected." It explains *Lowell* v. *Co. Commissioners*, supra, by saying: "There was no diversity of right or jurisdiction in that case, which made it necessary to determine whether the canals and land adjoining them could be taxed to the mill-owners as water power against a conflicting interest."

*Fall River* v. *Co. Commissioners*, 125 Mass. 567, holds that right of flowage is an easement in land that cannot be taxed independently, and the court say, that it forms part of the water power which is taxed in connection with the mills, as enhancing their value.

*Flax Pond Water Co.* v. *Lynn*, 147 Mass. 31, holds that one, who owns the right to maintain a dam and sluiceways upon the land of another, and is in the enjoyment thereof, may be deemed as in possession of real estate for the purposes of taxation, and that the soil may properly be taxed to him. This is the doctrine of *Paris* v. *Norway Water Co.*, 85 Maine, 330.

*Lowell* v. *Co. Commissioners*, 152 Mass. 381, holds that land enhanced by the ownership and use of the water power appur-

tenant thereto may be so taxed, notwithstanding existing statutes.

The plaintiff's dam and the land upon which it stands within the city of Auburn may be properly there taxed at a reasonable valuation, exclusive of the water power created thereby. That is potential and not taxable, except indirectly in the valuation of mills with which it is used. The doctrine held in *Paris* v. *Norway Water Co.*, supra, is analogous.

We are aware that a different doctrine prevails in New Hampshire, but do not think it so well comports with our state polity, and would give so just and equal basis for taxation as the one we are constrained to adopt. · *Cocheco Co.* v *Strafford*, 51 N. H. 455; *Winnipiseogee Lake, etc.*, v. *Gilford*, 64 N. H. 337; *Amoskeag Co.* v. *Concord*, 66 N. H. 562.

Although the ruling below seems to be incorrect, yet, as it is more strongly in the defendant's favor than it is entitled to have, the exceptions must be overruled.

*Exceptions overruled.*

EMERY, J. I find myself unable to fully acquiesce in the reasoning of the learned opinion, though it seems to have support in the cases cited from Massachusetts. The case bears to me a different aspect, and in view of the great importance of the question in a state like Maine, a consideration of the case in this aspect may not be useless. I venture therefore to express my views in a separate opinion.

I do not see the necessity and I doubt the expediency of undertaking to determine whether what is called " the water power" is wholly appurtenant to the dam, or wholly appurtenant to the mill, or partly appurtenant to each, or whether it is incorporated into either.

If by the term "water power" is meant the "water fall," or the "mill privilege," then it is simply a parcel of land over which a stream of water flows and falls, and is to be taxed in the town in which it is situated. So far as the land is more valuable by reason of the stream and fall upon it, so far are these to be considered in the valuation of the land, and no farther. This consequent increase of

value is a question in commercial economics and requires for its determination the consideration of possible revenues to be drawn from the land and the possible price to be obtained for it.

If by the term "water power" is meant the force, energy, or to quote from the opinion, the "potentiality" of falling water, then it is not appurtenant to, nor annexed to, nor an integral part of any particular parcel of real estate. It is just force, as gravitation is force. It may be exerted by or upon some material object, but it is no part of that object, either as an appurtenance or otherwise. Gravitation affects all matter but it is not in nor appurtenant to matter.

The intensity of the force exerted by falling water is according to the height from which it falls. While this force is exerted to some extent throughout the whole length of a river, it is usually only at comparatively few places that the fall is sufficiently sharp to develop intensity enough to be made practically serviceable as a mechanical power. It is only at these places, these "falls" thus formed by nature, that successful efforts have so far been made to utilize this force.

But under our law such utilization can be made only by leave of the owner of the land under and abutting the falls on either side. However great the intensity of the force exerted by the water at the particular falls in question,—however easy its utilization,—however great the demand and imperative the need for its utilization,—the owner of the land holds the indispensable key. He can impose his own terms for its use. This rule of law may often give a monopoly of great value. The falls upon his land may be the only one on a large river and within a wide territory. He has in such case, not a monopoly of the force exerted by the water of the river, but a monopoly of the only practical means or opportunity for its utilization.

This monopoly, thus valuable, is an incident of the ownership of the land and may often be the principal element in the value of the land. Large revenues may often accrue to the land owner solely from this monopoly. This monopoly, this revenue or chance of revenue from it, should be included in an estimate of the value

of the land. The whole value of the land with all these incidents is to be assessed and taxed in the town in which the land is situated.

The Union Water Power Company owns land in Auburn under and abutting the falls on the Androscoggin river known as the "Lewiston Falls." Upon this land it has erected dams for the utilization of the force exerted by the water in plunging over the falls. The force thus utilized is of immense power and is in great demand in that neighborhood for the propulsion of the machinery of numerous large factories. The force is great enough to furnish power for much additional machinery, if ever needed. The Union Water Power Company has the monopoly not strictly of the force, the power, but of the land upon which must be placed the essential appliances to utilize it. The company owns, not strictly the power, but the gateway through which alone the power can be captured and led out. It can thus impose such toll as it will upon all use of the power. It can make every mill and machine using the power a tributary to its exchequer. This monopoly, this power of exacting tribute from the increasing needs of the community, may be of much more value than the cost of the dam and the value of all the other incidents of the land. This monopoly value is an incident of the land and should be included in an estimate of the value of the land for taxation in Auburn. If only part of the land is in Auburn, there should be a proportional division of the whole value. The determination of this monopoly value is likewise a question in commercial economics.

I do not see, therefore, the need or expediency of declaring whether "water power" thus made available through the company's land is appurtenant wholly or partly to that land, or whether it passes on down the canals and becomes annexed to or incorporated in the mills below. As well try, it seems to me, to determine whether the force of the electric current is appurtenant to the dynamo, or to the lamp, or motor; whether the force that propels a cannon ball is appurtenant to the cannon or to the target; whether the wind is a part of the bellows or of the fire. The force is being continually expended, if continually renewed.

As to the mills, all that can be annexed to or incorporated in them as to water power is the somehow acquired right against the owner of the dam to have the water power transmitted to them. If such a right has been acquired by the mill owners, either personally or as an incident of the ownership of the mill, the value of such right is to be estimated in assessing the owner or the mill. The existence of a contract or covenant between the owner of the mill and the owner of the dam, which contract runs with the mill and the dam, may add to the value of each instead of subtracting from the value of either. It should not be assumed that taxing in Lewiston the right of the mill to have water power from the dam in Auburn should reduce the tax in Auburn upon the corresponding right of the dam to receive compensation therefor. The water power is not to be taxed in either town. The increased value of the real estate by reason of the incident natural monopoly, or incident acquired rights, is to be taxed in the town in which the real estate is situated.

The request of the City of Auburn was that the presiding justice consider the water power as appurtenant to the dam, and as properly taxable in the same municipality. The presiding justice declined to do this in terms, but I infer from the language of his finding that, in fixing the valuation of the real estate of the Union Water Power Company in Auburn, he did fully consider and include its capacity for valuable use as indicated in this note. I think this was all the city could require of him. His estimate of that value after considering and including all the proper elements is conclusive. There is no provision for an appeal therefrom.

*Exceptions overruled.*