WHITING-PLOVER PAPER COMPANY, Appellant, vs. TOWN OF LINWOOD and another, Respondents.

*April 2—April 30, 1929.*

For the appellant there was a brief by *Goggins, Brazeau & Graves* of Wisconsin Rapids and *George B. Nelson* of Stevens Point, and oral argument by *Mr. Nelson* and *Mr. Theo. W. Brazeau.*

*W. E. Atwell* of Stevens Point, for the respondents.

OWEN, J. The town of Linwood and the town of Plover are organized towns in the county of Portage. The Wisconsin river is the dividing line between said towns. The plaintiff owns and operates a paper mill in the town of Plover. It operates in connection with said mill a water power on the Wisconsin river consisting of a dam, one end

of which rests in the town of Plover and the other in the town of Linwood. For the year 1926 the town of Linwood assessed against the plaintiff a tax upon so much of the dam, dam site, and flowage as was situated and being in the town of Linwood. The question here presented is, Did this property constitute taxable property in the town of Linwood?

Practically all, if not all, of the power developed by the dam is used in the plaintiff's mill in the town of Plover. The entire water power was taxed by the town of Plover as an appurtenance to plaintiff's mill. The trial court held that that portion of the dam, dam site, and flowage situated in the town of Linwood was properly assessable in that town. Plaintiff appeals and contends that no part of the dam, dam site, or flowage was taxable in the town of Linwood, but that it was taxable in the town of Plover as an appurtenance to plaintiff's mill.

The statutes of this state provide that "All real property not expressly exempt from taxation shall be entered upon the assessment roll in the assessment district where it lies." Sec. 70.12, Stats. "Real property . . . shall include not only the land itself but all buildings and improvements thereon, including buildings on leased lands, and all fixtures and rights and privileges appertaining thereto, and also private railroads and bridges." Sec. 70.08, Stats. "In determining the value the assessor shall consider, as to each piece, its advantage or disadvantage of location, quality of soil, quantity of standing timber, water privileges, mines, minerals, quarries, or other valuable deposits known to be available therein, and their value." Sec. 70.32, Stats.

In *Bradley Co. v. Rock Falls,* 166 Wis. 9, 163 N. W. 168, it was contended that all of the flowage rights within a natural undeveloped water-power basin constituted appurtenances to the dam site. The court held that each of the four lots constituting the undeveloped dam site should be

assessed upon its value as land plus the value of the water privileges considered as a part of the total water privileges. In other words, it held that the value of the water privilege of each description should be assessed to it, such value being arrived at by a consideration of the relation it bore to all other water privileges taken as a unit, and that the assessor violated the statute in assessing against these four lots the value of all the water privileges within the basin. The decision in that case must result in an affirmance of this judgment, unless by some sort of legerdemain the development of this water power operates as a transfer of taxable property from the town of Linwood to the town of Plover. The plaintiff contends that the development of the power results in this transition, the theory being that the water power becomes an appurtenance to the mill where it is used.

"A thing corporeal cannot properly be appurtenant to a thing corporeal, nor a thing incorporeal to a thing incorporeal. According to this rule, land cannot be appurtenant to land." *Harris v. Elliott,* 10 Pet. 25, at p. 54. Plainly the dam and the dam site cannot become an appurtenance to the mill. That continues to be land which under our statutes must be placed upon the assessment roll of the district in which it is situated and assessed at its true value. The only water privilege of the character we are considering appurtenant to the dam site is the right to overflow it or the right to hold the water back upon it. The right to overflow other lands in the area constituting the natural water basin does not attach to the dam site. That right attaches to the respective parcels of land lying within the area of the basin and belongs to the owners of the land. The adaptability of this land to flowage purposes resulting from its topography and proximity to the dam site gives to the land an element of value which must be considered by the assessor in determining its value for taxation purposes. *Bradley Co. v. Rock Falls,* 166 Wis. 9, 163 N. W. 168. The value of land by

reason of its adaptability to a certain purpose is not lost when actually devoted to the purpose for which it is adaptable. The right to overflow this land must be procured by the water-power owner, and, so far as the value of the land for taxation purposes is concerned, it makes no difference whether the water-power owner acquires the fee or the mere right of flowage. "The entire property, including all interests in it, is assessed to the owner of the property as defined in the statute, and the right of every person claiming any interest in the property subordinate to the fee, whether under lease, contract, or otherwise, is extinguished if the property be sold in the exercise of the taxing power." *Aberg v. Moe,* 198 Wis. 349, 359, 224 N. W. 132, 136, 226 N. W. 301.

The statute requires that every description of land be placed upon the assessment roll for the assessment district in which it is located, and assessed at its true value. Every interest in the land must be assessed to the owner. The use to which it is devoted is an element of value which cannot be ignored in making such assessment. While the right to overflow lands is spoken of in *Bradley Co. v. Rock Falls,* 166 Wis. 9, 163 N. W. 168, as a water privilege, it is believed that this is a misnomer. It is only a right which every owner of property already has to use his property in any lawful way he pleases. If he chooses by artificial means to overflow it with water, the right so to do does not constitute a water privilege within the meaning of our taxation statutes, which require the assessor to consider water privileges in determining the value of land. *Spensley v. Valentine,* 34 Wis. 154, well illustrates the character of the water privilege which may become an appurtenance to land. But whether or not the right to overflow land constitutes a water privilege, it is a privilege appurtenant to the land overflowed, and to no other piece or parcel of land, and its value must be included in the assessment of the land thus overflowed.

It must be conceded that early cases in Massachusetts and Maine furnish some support for the contention of plaintiff. *Boston Mfg. Co. v. Newton,* 39 Mass. 22; *Union Water Power Co. v. Auburn,* 90 Me. 60, 37 Atl. 331. However, recent cases in those jurisdictions pay no great tribute to the soundness of the doctrine of the earlier cases. *Blackstone Mfg. Co. v. Blackstone,* 200 Mass. 82, 85 N. E. 880; *Saco W. P. Co. v. Buxton,* 98 Me. 295, 56 Atl. 914; *Penobscot C. F. Co. v. Bradley,* 99, Me. 263, 59 Atl. 83. It is generally held that flowage rights such as these are taxable in the district wherein the lands overflowed are located and not in the district where the power plant is situated. *Slatersville F. Co. v. Greene,* 40 R. I. 410, 101 Atl. 226; *Winnipiseogee Lake C. & W. Mfg. Co. v. Gilford,* 64 N. H. 337, 10 Atl. 849; *Amoskeag Mfg. Co. v. Concord,* 66 N. H. 562, 32 Atl. 151; *Beaverton v. Lord,* 235 Mich. 261, 209 N. W. 122; *Penobscot C. F. Co. v. Bradley,* 99 Me. 263, 59 Atl. 83; *Blackstone Mfg. Co. v. Blackstone,* 200 Mass. 82, 85 N. E. 880; *Pingree v. County Comm'rs,* 102 Mass. 76. It seems plain that the tax complained of was lawfully levied by the town of Linwood.

It perhaps may properly be said that the development of this water power brought into existence something new and of value, to wit, the power. So far as this power became an appurtenance to plaintiff's mill, it added to the value thereof, and that feature may be taken into consideration by the assessor in determining the value of the mill.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., dissents.