Union Falls Power Company, Respondent, vs. Marinette County, Appellant.

*March 13—June 12, 1941.*

For the appellant the cause was submitted on the briefs of *N. B. Langill* of Marinette.

For the respondent there were briefs by *Lehner & Lehner* and *Adolph P. Lehner,* all of Oconto Falls, and oral argument by *Adolph P. Lehner.*

ROSENBERRY, C. J. The complaint alleges that the plaintiff, Union Falls Power Company, a Wisconsin corporation,

owns, and pursuant to a permit issued to it by the public service commission of Wisconsin, maintains a dam known as "Park dam" in the Menominee river, located in the westerly limits of the city of Marinette; that the dam has been maintained there many years, having been rebuilt in 1921–1922, and the waters impounded thereby have been maintained at their present level since April 24, 1922; that the pond created by the dam is approximately one mile long, the upriver water level being raised by such impounded waters and the low lands, adjacent to the river, flooded for a distance of approximately seven miles. It is alleged that on November 9, 1903, the Menominee River Boom Company, a Wisconsin corporation, was the owner of and maintained the dam, and likewise was the owner of government lot (3), section 30, township 31 north, range 23 east, Marinette county; that on said date it sold said land to Albert Geartts but retained a flooding privilege and easement, whereby it reserved for itself, its successors and assigns "the right to flood and reflood said land and to have and keep the same covered with water from the river;" that in June, 1916, the Marinette & Menominee Paper Company acquired by purchase from the owner of the fee of government lots (1) and (2), section 29, township 31 north, of range 23 east, Marinette county, the flooding privileges and easements, whereby it acquired "all riparian rights and the perpetual right to overflow or cause to be overflowed any and all parts of the premises that may be overflowed by the operation and maintenance of the Park dam in the Menominee river as now constructed, or as it may be at any time enlarged or reconstructed;" and that plaintiff acquired by purchase Park dam and the flooding privileges and easements aforesaid.

The lands described are located approximately one and one-half miles westerly of Park dam in the town of Porterfield, Marinette county, and consist of eleven and one-half acres which are, and ever since April 24, 1922, have been flooded and a part of the Menominee river.

It is alleged that the flowage easements were of record in the office of the register of deeds in Marinette county. It is further alleged that throughout the years in question, 1932, 1933, and 1934, the assessor of the town of Porterfield assessed the real estate merely by describing it as government lot (3), section 30, and as government lots (1) and (2), section 29, township 31 north, of range 23 east, to the fee owners without referring to plaintiff's flooding easements. The assessor did not separately assess the easements. The flowage easements were included in and assessed as a part of the assessment of Park dam in the city of Marinette.

It is alleged that the owners of the fee of the lots described did not pay the taxes thereon for the years 1932, 1933, and 1934, and the treasurer of the town of Porterfield returned such taxes to the treasurer of Marinette county as delinquent. The county treasurer advertised for sale and subsequently sold the lands to Marinette county and issued tax certificates to the county. The county clerk, pursuant to resolution of the county board, after due notice, issued tax deeds of the lots described to Marinette county, no reference being made therein to plaintiff's flooding easements.

The plaintiff contends that its flooding easements are not real estate and were not assessable in the town of Porterfield, but that if they were, then such must be assessed separately to plaintiff.

Sec. 70.12, Stats., provides:

"All real property not expressly exempt from taxation shall be entered upon the assessment roll in the assessment district where it lies."

Sec. 70.03, Stats., defines real property as follows:

"The terms 'real property,' 'real estate' and 'land,' when used in this title, shall include not only the land itself but all buildings and improvements thereon, and all fixtures and rights and privileges appertaining thereto."

Sec. 70.17, Stats., provides:

"Real property shall be entered in the name of the owner, if known to the assessor, otherwise to the occupant thereof if ascertainable, and otherwise without any name. The person holding the contract or certificate of sale of any real property contracted to be sold by the state, but not conveyed, shall be deemed the owner for such purpose. The undivided real estate of any deceased person may be entered to the heirs of such person without designating them by name. The real estate of an incorporated company shall be entered in the same manner as that of an individual. Improvements on leased lands may be assessed either as real property or personal property."

Under secs. 70.03 and 70.12, Stats., there is no provision for a separate assessment of flowage easements. Sec. 70.32 (1), so far as here material, provides:

"Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value the assessor shall consider, as to each piece, its advantage or disadvantage of location, quality of soil, quantity of standing timber, water privileges, mines, . . . and their value. . . ."

The rights involved in this case are what are commonly known as flowage rights, that is, the right of one owner to flow the lands of another by the maintenance of a dam. A flowage right is clearly an easement. An easement is a liberty, a privilege, or an advantage in lands without profit and distinct from an ownership. *Hazelton v. Putnam* (1850), 3 Pin. 107. See also 17 Am. Jur. p. 923, § 2, and cases cited.

Easements are of two classes, easements appurtenant and easements in gross. An appurtenant easement is an incorporeal right which is attached to and belongs with some greater and superior right,—something annexed to another thing more worthy and which passes as incident to it. It is

incapable of existence separate and apart from the particular land to which it is annexed. *Reise v. Enos* (1890), 76 Wis. 634, 45 N. W. 414. See also 17 Am. Jur. p. 929, § 10, and cases cited.

A thing or right appertains to something when it belongs to it. An easement therefore appertains to the so-called dominant estate or the estate to which it is annexed or to which it belongs. It is clear therefore under the definition of "real property" contained in sec. 70.03, *supra,* that real property includes such easements and appurtenances as appertain to the land itself. *Milwaukee v. Chicago, M., St. P. & P. R. Co.* (1936) 223 Wis. 73, 269 N. W. 688.

The question then is, Should the right to flow the lands be considered in the valuation of the lands flowed or be considered in the valuation of the lands to which the easement is appurtenant? We are required to deal with this matter somewhat at length because of statements made in *Whiting-Plover Paper Co. v. Linwood* (1929), 198 Wis. 590, 592, 225 N. W. 177. It is there said:

" 'A thing corporeal cannot properly be appurtenant to a thing corporeal, nor a thing incorporeal to a thing incorporeal. According to this rule, land cannot be appurtenant to land.' *Harris v. Elliott,* 10 Pet. 25, p. 54. Plainly the dam and the dam site cannot become an appurtenance to the mill."

What is said is quite true but the conclusion drawn from it does not follow. The dam and dam site are not appurtenant to the mill. The mill is appurtenant to the dam site, that is, the land upon which the mill and dam in part at least is constructed. By a flowage right is not meant the right to build a wall around a piece of land and cover it with water nor can such a right be described as a water right. A "water privilege" is an independent right and is not a servitude upon some other thing and is an incorporeal hereditament, being neither tangible nor visible. *Bennett v. Twin Falls North Side Land & Water Co.* (1915) 27 Idaho, 643, 150 Pac. 336.

The term "water right" has acquired a local significance in regions where irrigation is common. See 44 Words and Phrases, 748. See also *Piper v. Connelly* (1884), 108 Ill. 646.

Whether the right to flow lands by a dam yet to be constructed is an easement in gross or appurtenant is a question that need not be decided in this case for the reason that both the flowage rights here are annexed to a developed water power. When therefore it is said in sec. 70.32 (1), Stats., that the real property shall be valued, etc., by definition real property includes the privileges appertaining thereto. As defined in sec. 70.03, there can be no question that the flowage right in this case appertains not to the land flowed but to the land upon which the dam is constructed and should be assessed against the land to which it is appurtenant. That it appears from the allegations contained in the complaint has been the practice for a great many years. What is said in *Whiting-Plover Paper Co. v. Linwood, supra,* as to the nature of a water privilege is not borne out by the definition. The privilege of overflowing lands is not a water privilege appurtenant to the lands overflowed. As to those lands a water privilege is something appurtenant to it, as for instance, the right to water from a stream. It is the failure to make this distinction that led to the erroneous conclusion in *Whiting-Plover Paper Co. v. Linwood, supra.*

We call attention to the fact that in *Bradley Co. v. Rock Falls* (1917), 166 Wis. 9, 163 N. W. 168, the court was dealing with a piece of land in a flowage basin of an undeveloped water power. In that case the owner of the land was still in the enjoyment of all of his rights as owner. He had no means of flowing the lands in question. He could simply grant the right to flow the lands to the person owning the dam site. The statute does not deal with purely theoretical rights but rather with a usable right, that is, one that can be availed of.

By sec. 75.14 (1), Stats., it is provided that a tax deed—

"shall vest in the grantee an absolute estate in fee simple in such land subject, however, to all unpaid taxes," etc.

In *Aberg v. Moe* (1929), 198 Wis. 349, 359, 224 N. W. 132, 226 N. W. 301, by way of discussion it was said:

"No doubt the legislature might empower the assessor to assess the leasehold interest against the lessees and so divide up the property for the purposes of taxation. That, however, has never been the policy of our law so far as we know except for a brief period when the state undertook to tax the respective interests of the mortgagor and mortgagee separately. The entire property, including all interests in it, is assessed to the owner of the property as defined in the statute, and the right of every person claiming any interest in the property subordinate to the fee, whether under lease, contract, or otherwise, is extinguished if the property be sold in the exercise of the taxing power."

From this it is argued that the court has construed the statute to convey all interest in the land; that the right to flow is an interest in land and therefore the right of flowage is conveyed by the tax deed. This ignores the definition of "land" contained in the statute. The easement is assessed with the land to which it appertains which is the dominant estate. As to the owner of the land flowed it is an incorporeal right and it operates to diminish the value of the servient estate. See *Tax Lien Co. v. Schultze* (1914), 213 N. Y. 9, 106 N. E. 751, L. R. A. 1915 D, 1115.

An easement, created or reserved in a grant, for the benefit of adjoining lands of the grantor is appurtenant to such land and binding on that granted, and passes by a subsequent conveyance of the dominant estate without express mention in the conveyance. *Barkhausen v. Chicago, M. & St. P. R. Co.* (1910) 142 Wis. 292, 124 N. W. 649, 125 N. W. 680.

Certainly an easement cannot appertain both to the dominant and servient estate. By statute its value should be included in the assessment of the dominant estate. It therefore does not pass upon tax sale of the servient estate. Such is the law according to the great weight of authority. *Tide Water Pipe Co. v. Bell* (1924), 280 Pa. 104, 124 Atl. 351, 40 A. L. R. 1516, and annotation 40 A. L. R. 1523, and cases cited. See also *Tax Lien Co. v. Schultze, supra.*

*By the Court.*—Order affirmed, and cause remanded for further proceedings.