209 P.2d 530

**STORRIE PROJECT WATER USERS ASS'N v. GONZALES et al. (STATE TAX COMMISSION, Intervenor).**

No. 5091.

Supreme Court of New Mexico.

Sept. 1, 1949.

E. P. Ripley, Santa Fe, for intervenor for appellant State Tax Commission.

Noble & Spiess, Las Vegas, for appellee.

SADLER, Justice.

The question presented for decision is whether the earthen dam, impounding the waters of Storrie Lake, or reservoir, title to which is in Storrie Project Water Users Association, a non-profit corporation organized under 1941 Comp. §§ 77-1601 to 77-1609, as the administrative agency to maintain and operate an irrigation system for supplying water for the mutual advantage of its shareholders in the irrigation of their lands, is assessable separate and apart from the lands to which the water is appurtenant.

The judgment sought to be reviewed in the particular mentioned was rendered by the district court of San Miguel County in a suit for a declaratory judgment brought by the appellee, Storrie Project Water Users Ass'n., a corporation, as plaintiff, against Fidencia Gonzales, Assessor, and Manuel J. Baca, Treasurer, of San Miguel County, as defendants, in which State Tax Commission was granted leave to intervene, all appearing in this court as appellants. The nature of the lower court's views on the matter presented may best be disclosed by quoting the adjudicating portions of its judgment, as follows:

"It Is, Therefore, Ordered, Adjudged And Decreed that neither the dam, the dam site, reservoir, reservoir site, ditches or canals are subject to assessment for taxation separate and apart from the irrigated lands to which such water, water rights, dams, reservoirs, ditches, canals and headgates are appurtenant.

"It Is Further Ordered, Adjudged And Decreed that the situs of the dam, reservoir, canals, ditches and headgates for the purpose of taxation is the situs of the land to which the water impounded thereby or therein is appurtenant, and that such water and water rights, dams, reservoirs, ditches, canals, headgates and irrigation system is an element which was and should be considered in fixing the value of the lands to which said water or water rights are applied and are appurtenant."

The adjudications made were based on findings incorporated in the trial court's decision previously filed. From them it appears that Storrie Project Water Users Ass'n., the plaintiff below, is a non-profit corporation organized under 1941 Comp. §§ 77-1601 to 77-1609. Each landowner is given a share of stock in the association for each acre of irrigated land owned by him. The plaintiff corporation, sometimes called the Water Users Association, is a mutual association organized to acquire, maintain and operate diversion dams, intake canals, storage reservoirs, dams, irrigating canals,

ditches, flumes and irrigation works for the mutual benefit of its shareholders and for the sole purpose of distributing water for the irrigation of lands owned by them.

The Water Users Association distributes the water impounded pro rata to its stockholders, who use it exclusively for irrigating their lands. No water is sold for any other purpose. The Water Users Association is purely a mutual reservoir company, in which the capital stock stands for and represents the consumer's interest in the reservoir, dams, canals and water rights. The sole benefit derived from owning stock in the association is the exclusive right to the use of the water it represents. The only water received for the irrigation of these lands is that impounded in said reservoir by said dam. The only use to which said water is put is the irrigation of said lands to which said water is appurtenant and no water or water rights are sold. No dividend can ever be declared. The only revenues received by plaintiff are from pro rata assessments imposed upon its stockholders, the proceeds and receipts of which are used exclusively for the repair, maintenance and cost of operation of said irrigation system. The association has no other means of raising money.

The lands owned by the shareholders in plaintiff corporation are assessed as irrigated lands and at a substantially higher valuation than non-irrigated lands. There is no other source from which shareholders in the association can receive water for the irrigation of their lands. The dam in question was assessed against plaintiff for 1945 by the Assessor of San Miguel County as follows: "Storrie Lake $40,000." The reservoir site itself was separately assessed for 1945, an assessment which plaintiff suggests, but does not seriously urge in its desire for a decision of the more important question, necessarily embraces the dam resting on the "site." In view of the public interest involved in a decision of the main question, we shall proceed to resolve it.

While there are points of distinction in the facts between the present case and that of State ex rel. State Tax Commission v. San Luis Power & Water Company, 51 N.M. 294, 183 P.2d 605, 606, we do not think they suffice to remove the one at bar from the latter's controlling influence as a precedent. The opinion in that case, after referring to the statute (1941 Comp. § 76-101) declaring all property, real, personal and intangible shall be subject to taxation, except as in the constitution and existing laws otherwise provided, quotes approvingly the language of our opinion in the earlier case of Sims v. Vosburg, 43 N.M. 255, 91 P.2d 434, as follows:

"All tangible property in New Mexico is subject to taxation in proportion to value, and should be taxed, unless specifically exempted by the constitution or by its authority. Secs. 1, 3, and 5 of Article VIII, N. M. Constitution; Albuquerque Alumnae

Ass'n v. Tierney, 37 N.M. 156, 20 P.2d 267; State v. State Tax Commission, 40 N.M. 299, 58 P.2d 1204."

It is true that in the San Luis Power Co. case, the irrigation company involved was a corporation organized and operated for profit, whereas here the company is a mutual benefit, non-profit organization engaged wholly and solely in the business of storing and distributing water for irrigation to its own shareholders and none others; nevertheless, if we find in the constitution no authority for assessing separately physical works of a non-profit corporation like this in enhanced value of lands irrigated, or an exemption as in the case of community ditches, we see no escape from the conclusion that its physical properties are assessable in kind and subject to taxation as thus assessed. Unfortunately for the plaintiff, it is not enough to show that the function of the physical works is such as to add in the aggregate an even greater taxable value to other properties owned by its shareholders, thus rendering it fair and just, as counsel argue, to relieve the corporation of having its works assessed in kind and taxed as such.

As for an exemption, we are unable to find in constitutional provisions on the subject any justification therefor. Const. art. 8, § 3, exempting, among other things, the property of the United States, the State and all counties, towns, cities and school districts, etc., and "all property used for educational or charitable purposes," contains no language broad enough to include the plaintiff. The nearest approach to such language is the exemption accorded "community ditches and all laterals thereof". Indeed, the plaintiff asks us to ignore its corporate entity and place it in the class of community ditches, thereby exempting its dam, ditches, laterals and reservoir. The words "community ditches" as employed in this language of the constitution have, and at the time of their use in Const. Art. 8, § 3 had, a well defined and understood meaning in New Mexico, with which the plaintiff is unable to identify itself. In Candelaria v. Vallejos, 13 N.M. 146, 81 P. 589, 595, concerning them the late territorial Judge Pope, said:

"It is to be noted, however, at the very outset, that the corporation which the Legislature has thus created out of each community ditch in the territory is in no sense a voluntary corporation. The investiture of corporate functions is not even made permissive. The Legislature says that such ditches 'shall * * * be considered as corporations,' and this result follows equally whether all or none of these interested in such ditch desire it to become a corporation. The corporation thus created is not endowed with the general powers pertaining to corporations. It has only the powers expressly or by necessary implication granted to it by the act creating it, and no more. It belongs to the class of corporations known as public involuntary quasi corporations."

The act creating community ditches quasi public corporations itself contains language which excludes the plaintiff from taking on character as such, if otherwise to be included. L.1895, c. 1, § 8, 1941 Comp. § 77-1424. So far as material it reads:

"The provisions of these sections shall apply only to such ditches as have been heretofore and are now known and regarded as community ditches, under the laws of this state; and under the provisions of said sections, shall be construed to mean such ditches as are not private, *and such as are not incorporated under the laws of this state* or of some other state or territory, and are held and owned by more than two owners as tenants in common, or joint tenants." (Emphasis added.)

The plaintiff relies upon certain Colorado and Montana cases to support its claim that the dam and physical works are really taxed in the enhanced value added to the lands of the shareholders through irrigation supplied by waters which the dam stores and the ditches distribute. Hence, separate assessment of its works is not required. Among the cases cited are Kendrick, County Treasurer v. Twin Lakes Reservoir Co., 58 Colo. 281, 144 P. 884; Shaw v. Bond, 64 Colo. 366, 171 P. 1142; Hale v. Jefferson County, 39 Mont. 137, 101 P. 973; Brady Irrigation Co. v. Teton County, 107 Mont. 330, 85 P. 2d 350. As we shall later show these cases do not shake us in the soundness of the fundamental conclusion upon which our de-cision in State v. San Luis Power & Water Co., supra, rests, namely, that tangible, physical property in New Mexico, such as we are here concerned with is assessable and taxable as assessed.

In the case just mentioned we held that an irrigation company storing and distributing water for hire for the irrigation of lands of private owners could not hold its works free from assessment and taxation on the theory they bore their just share of taxation in taxes paid by such owners on the enhanced value of their lands. We cited the case of San Luis Power & Water Co. v. Trujillo, 93 Colo. 385, 26 P.2d 537, in which the Supreme Court of Colorado made a similar holding as to the irrigation works of the same company in spite of a provision in the Colorado Const., Art. 10, § 3, reading:

"Ditches, canals and flumes owned and used by individuals or corporations, for irrigating land owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed so long as they shall be owned and used exclusively for such purposes."

It is the provision just quoted found in the Colorado Constitution which explains the decisions in Colorado cases such as Kendrick v. Twin Lakes Reservoir Co., supra, and Shaw v. Bond, supra. Realizing the force of this distinction, there being no such provision in the New Mexico

Constitution, counsel for plaintiff seek to escape it by pointing out that in Colorado the constitution confines the prohibition against separate assessment to "ditches, canals and flumes"; yet, in the Kendrick case separate assessment of the "dam," and in Shaw v. Bond, supra, separate assessment of the dam, the bed of the reservoir and the reservoir itself, all were denied. The implication to the distinction sought is that, as to the dam and reservoir site, the decisions were unaided by the constitutional provision and are on all fours with the situation in New Mexico. But such is not the case. As pointed out in the later case of Logan Irrigation District v. Holt, 110 Colo. 253, 133 P.2d 530, 533, other portions of the works of an irrigation system, such as the "headgates and dams," "bed of the reservoir" and the "reservoir" itself and in the Holt case, even the "caretaker's house" as well as other needful buildings devoted to the operation of the system, are all held to be within the prohibition by giving the words "ditches, canals and flumes" an enlarged meaning. The court said:

"Counsel for defendants in error contend that the words, 'ditches, canals and flumes,' have a certain well-defined and recognized meaning which should not be extended by judicial interpretation. In many decisions we have enlarged the meaning of these words in construing the section under consideration to include: in Kendrick v. Twin Lakes Reservoir Co., 58 Colo. 281, 144 P. 884, headgates and dams; Shaw v. Bond, 64 Colo. 366, 171 P. 1142; and Antero & Lost Park Reservoir Co. v. Board of County Commissioners, 65 Colo. 375, 177 P. 148; Id., 75 Colo. 131, 225 P. 269, the bed of the reservoir, the reservoir dam and the reservoir.

\*     \*     \*     \*     \*     \*

"In the case at bar the uncontradicted evidence shows that the lands owned by plaintiffs in error surround the Prewitt Reservoir, are adjacent thereto, and are parts of the reservoir site, and such lands, and the improvements thereon, consisting of a caretaker's house and other buildings, are integral parts of the reservoir system and are used and necessary for the proper operation and maintenance thereof. We are of the opinion that such lands, even though located above the highwater line of the reservoir, and the improvements mentioned are integral parts of the whole system; that the water rights of plaintiffs in error embrace and include the value of the lands and improvements; that such lands and improvements are within the meaning of the words 'ditches, canals and flumes,' as used in section 3, article X, of the Colorado Constitution, and are therefore exempt from separate taxation."

When it comes to the Montana cases, Hale v. Jefferson County, supra, and Brady Irrigation Co. v. Teton County, supra, it is more difficult to distinguish. Counsel for

defendants, faced with the dilemma of either admitting they are decisions against him, or of distinguishing them, attempts the latter alternative, confessing at the outset that he has a rather difficult assignment. He insists that a Montana statute, 1935 Rev.Code, § 6671, cited in the Brady case, explains the decisions. It makes "anything," even land itself, as he claims, appurtenant to land "when it is by right used with the land for its benefit." He claims no counterpart of this statute is to be found in New Mexico. In making this argument he plants himself on rather shaky ground, admitting that somewhat similar provisions exist in our statutes making water appurtenant to land when used for its benefit. 1941 Comp. §§ 77-102 and 77-522. Indeed, we doubt if the statute is as broad as the claim made for it.

We prefer to recognize the Montana cases as decisions squarely against the position taken by the defendants in this case, as well as against the rationale of our decision in State v. San Luis Power & Water Co., supra, and refuse to follow them. They arrive at a result which could only be reached in Colorado by aid of a constitutional prohibition against separate assessment. We think plaintiff's counsel in the case at bar (and seemingly the same is true in the Montana cases mentioned) have confused "valuation" with "assessability." If value be made the test of assessability, then value disappearing, an exemption not

to be found in our constitution arises. "All tangible property in New Mexico", we said in Sims v. Vosburg, supra [43 N.M. 255, 91 P.2d 435], "is subject to taxation in proporation to value." And now we may add that, for taxation purposes, any such property is presumed to have some value, even though it be only a nominal one.

The question is not a difficult one if we confine ourselves to fundamental considerations. It may be simply put as follows:

(1) All tangible property is subject to taxation. N.M.Const. Art. 8, §§ 1, 3, 5.

(2) A dam and reservoir site are tangible property.

(3) All real property, unless otherwise permissibly assessed and valued for purposes of taxation, is subject to assessment on January 1st, each year, "in the county where it is situated." 1941 Comp. § 76-201.

Tested by the foregoing formula, there can be no question but that the dam and reservoir site are to be assessed and valued for taxation purposes at their situs. There is no authority in the constitution nor in any applicable statute otherwise to assess and value these tangible properties for purposes of taxation. Wherever the question has arisen, except in Montana, a constitutional or statutory provision has sessment of the physical works in the ensupported an exemption, or authorized ashanced value of the lands irrigated. It is

true of the Colorado cases cited above in dealing with non-profit mutual, irrigation corporations. Colo.Const. Art. 10, § 3. "In the absence of this provision, all canals would be subject to separate taxation." Long on Irrigation, 138, § 76; Empire Land & Canal Co. v. Board of County Com'rs. of Rio Grande County, 21 Colo. 244, 40 P. 449.

A statute supports Wyoming decisions authorizing taxation of works in enhanced value of land. Wheatland Industrial Co. v. Johnson, Wyo., 186 P.2d 377. A statute in Idaho exempts irrigation canals, ditches and water rights. Andrews v. North Side Canal Co., 52 Idaho 117, 124, 12 P.2d 263. Indeed, not a single state, except Montana, so far as our research discloses, has adopted the practice of assessing the physical works of mutual benefit irrigation districts, such as the one here involved, in the enhanced value of the lands irrigated without the aid of a statute or a constitutional provision. Counsel for plaintiffs have cited none, save Montana, and the reasoning of the decisions in that state so holding is criticized by the United States Circuit Court of Appeals for the 9th Circuit in Ackroyd v. Winston Bros. Co., 113 F.2d 657.

On the other hand, the highest courts of several other states have condemned and criticized this method of assessing and taxing tangible property as impractical and without support in reason and logic. Whiting-Plover Paper Co. v. Town of Lynwood, 198 Wis. 590, 225 N.W. 177, 64 A.L. R. 140; Winnipiseogee Lake Cotton & Woolen Mfg. Co. v. Gilford, 64 N.H. 337, 10 A. 849; Slatersville Finishing Co. v. Greene, 40 R.I. 410, 101 A. 226, L.R.A. 1917F, 585; Union Water Co. v. Auburn, 90 Me. 60, 37 A. 331, 37 L.R.A. 651, 60 Am.St.Rep. 240.

The reasoning employed in the decisions cited seems unanswerable. It does not distinguish these cases to remind that most of them are decisions from states removed from the arid west. Geography cannot alter the logic of fundamental principles. In a very illuminating annotation of the subject, "Place of taxation of dam, flowage rights, or water power," in 64 A.L.R. 143, the author discusses the subject, as follows:

"Obviously, added taxable value of either tract, improved or unimproved, must be determined in view of its physical location and other relationship with reference to the other tract. To take cognizance, for the purpose of determining taxable value, of the fact that the commercial value of the property where the power is created or impounded is increased by the location of a mill site at a point where the developed power may be effectively applied is neither to fix the situs of the water power at the dam site, detract from the taxable

value at the mill site, nor to impose double taxation. It is merely to determine the taxable value of the dam site with reference to an important factor that affects. It does not attribute to the dam site a value which inheres in the mill site, any more than would the consideration, in fixing the taxable value of an hotel, of the fact that it is favorably located with reference to a railroad station, appropriate any of the value of the station itself. So, there is no appropriation of exclusive situs or appurtenance by the taxing power at the mill site when cognizance is taken of the fact that the commercial value of the property at that point is increased by its relation to the property where the power is created. The advantages are reciprocal, certainly as regard the commercial value of the property at either point, and it is not apparent why they should not be so regarded for the purpose of their taxable values. This view avoids all artificial reasoning as to the situs of the water power as such, or of the various structures or rights involved in its creation, and all questions as to whether the power itself, or any of its elements, are to be regarded as the exclusive appurtenance of either tract."

In Winnipiseogee Lake Cotton & Woolen Mfg. Co. v. Gilford, supra, the Supreme Court of New Hampshire said [64 N.H. 337, 10 A. 850]:

"The entire value of a parcel of land may consist in its capacity to render other lands valuable; as if in a desert a single acre were found whereon artesian wells could be sunk, producing sufficient water to irrigate and make fertile the whole desert. The acre would be of great value, because by means of it lands otherwise worthless could be made valuable. It could not be justly appraised without considering its effect upon them. But the increased value of the irrigated lands would not be the measure, or form any part, of its value. A fair appraisal of the acre would not include any part of the increased value of other land; nor would an appraisal of the irrigated lands at their full value include any part of the acre's value."

The framers of our constitution in incorporating in section 3 of Article 8 an exemption in favor of "community ditches and all laterals thereof" evidently did not comprehend that these tangible irrigation works would be taxable in the enhanced value of the lands irrigated by them; otherwise, they would have so ordered the exemption as to cause it to operate in favor of such lands. Obviously, they felt the ditches and laterals, but for the exemption granted, would be assessed and taxed as other tangible property—at their situs.

Nor have plaintiff's counsel, notwithstanding the claim that physical works such as dam and reservoir sites of companies like plaintiff have been assessed and taxed over the years in enhanced value of the lands irrigated, pointed us to a single coun-

ty in the state, if there be any such, where a higher standard of value for taxation purposes is employed for lands of shareholders in such companies having storage facilities than is employed for lands irrigated by direct diversion. Unless such a distinction is made, then dam and reservoir sites escape taxation in the employment of this method of assessment for taxation purposes.

Consideration of this phase of the matter suggests the pertinent inquiry as to what difference it can make to the shareholders in such a company as plaintiff, a mutual benefit irrigation company, whether the value of its dam and reservoir site be taxed at their situs, or be rendered for taxation in the enhanced value of the lands irrigated. If the taxable value of such works be fairly placed on the tax rolls in enhanced value of individual lands of the shareholders, the tax is paid by each of them in the form of ad valorem taxes on the land. On the other hand, if these physical properties are taxed at their situs, then the individual shareholders make up the amount of such taxes in the form of assessments against their individual shares. It is quite impossible to see how it can make the slightest difference to the shareholders whether they pay the tax one way or the other, if assessment and levy of the tax, whether paid the one way or the other, be fairly and scientifically administered. We cannot assume that the shareholders do not desire to pay the just tax on the fair value of such works, however its collection is administered.

It is easily to be seen that almost insoluble difficulties of administration present themselves in certain cases if the system of assessing and levying the tax advocated by counsel for plaintiff be employed. Not infrequently, the dam and reservoir site of an irrigation company, both mutual benefit and private companies, will lie in one state or county and the lands irrigated thereby, or most of them, will lie in still another. Cf. State ex rel. State Tax Commission v. San Luis Power and Water Co., supra, and Wheatland Industrial Co. v. Johnson, supra. Just how the state or county where the works are located would go about getting its share of taxes on the fair value of such works, assessed and collected beyond its borders in the enhanced value of lands there irrigated, we are unable to see.

The theory of a result that permits tangible, physical property, such as a dam, or a reservoir site, to go unassessed where located, and be treated as assessed and its taxable value realized on elsewhere, is reflected in the trial court's judgment adjudicating that "the situs of the dam * * * is the situs of the land to which the water impounded thereby or therein is appurtenant." It requires a refinement of reasoning which we are unable to indulge to treat anything so tangible, fixed and immobile as an

earthen dam and reservoir site appurtenant to other lands for purposes of taxation. "A thing corporeal cannot properly be appurtenant to a thing corporeal." Harris v. Elliott, 10 Pet. 25, 35 U.S. 25, 9 L.Ed. 333. Nor in a strict legal sense can "land" ever be appurtenant to "land." New Orleans Pacific Ry. Co. v. Parker, 143 U.S. 42, 55, 12 S.Ct. 364, 36 L.Ed. 66, 70; Rivas v. Solary, 18 Fla. 122, 127; Leonard v. White, 7 Mass. 6, 5 Am.Dec. 19. Neither can a water ditch be appurtenant to another water ditch. Donnell v. Humphreys, 1 Mont. 518, 525. See, also, case notes in 13 Am.Dec. 657, and 15 L.R.A. 652. In the case note in American Decision, the annotator states:

"The general rule is that land cannot be appurtenant to land. Buszard v. Capel, 8 Barn. & Co. 141; Hill v. Grange 1 Plowd. 164; Lister v. Pickford, 34 Beav. 576; St. Louis Bridge Co. v. Curtis, 103 Ill. 410."

Applying this principle to the present facts, the system of assessment and levy of taxes invoked by plaintiff would make a dam and reservoir site, being things corporeal, "appurtenant" to the land irrigated, another thing which is corporeal. This violates the general rule that "land cannot be appurtenant to land." The trial court erred in holding the dam was not subject to assessment apart from the lands irrigated by waters which it stores.

In view of the conclusion reached, and the fact that the dam is in a separate ownership from that of the lands, we do not see the "double taxation" of which the plaintiff complains. Nor, indeed, is double taxation constitutionally objectionable in New Mexico, if the taxes are equal and uniform upon subjects of the same class. State v. Tittmann, 42 N.M. 76, 75 P.2d 701. Furthermore, in view of the confusion in the record as to whether assessment of the reservoir site actually embraces the land on which the dam rests, we are unable to dispose of the appeal on the assumption that it does. Nor do we wish anything said to be taken either as approval or disapproval of the validity of L.1947, c. 86, purporting to validate the method of assessment of the physical properties of irrigation works urged by counsel for plaintiff.

It follows from what has been said that the judgment reviewed is erroneous. It should be reversed and the cause remanded, with a direction to the trial court to set aside its judgment, and for further proceedings not inconsistent with the views herein expressed.

It is so ordered.

LUJAN, McGHEE, and COMPTON, JJ., concur.

BRICE, C. J., dissents.